694 A.2d 165

**ABINGTON CENTER ASSOCIATES LIMITED PARTNERSHIP**

v.

**BALTIMORE COUNTY, Maryland**

No. 1202, Sept. Term, 1996.

Court of Special Appeals of Maryland.

May 29, 1997.

582

Gary P. Aiken (Friedman and Friedman, on the brief), Towson, for Appellant.

Matthew Weir, Asst. County Atty. (Virginia W. Barnhart, County Atty. and William O. Jensen, Jr., Asst. County Atty., on the brief), Towson, for Appellee.

Argued before MOYLAN, WENNER and HOLLANDER, JJ.

HOLLANDER, Judge.

In this case, we must determine whether a taxpayer who has not paid a disputed Baltimore County transfer tax must pursue an administrative remedy before challenging in circuit court the transfer tax and imposition of a lien on its property. Abington Center Associates Limited Partnership ("Abington"), appellant, instituted a declaratory judgment action in the Circuit Court for Baltimore County, claiming that Baltimore County (the "County"), appellee, improperly assessed a transfer tax in the amount of $83,840.00, and then unconstitutionally imposed a lien on Abington's property when it refused to pay the tax. The circuit court concluded that appellant failed to exhaust its administrative remedies and dismissed the suit.

Appellant noted a timely appeal and presents a pentad of questions for our consideration, which we have rephrased slightly.

I. Does the Maryland Tax Court have jurisdiction over challenges to the Baltimore County transfer tax? If so, has such jurisdiction been implemented?

II. Does the Circuit Court for Baltimore County have jurisdiction over this dispute under the Uniform Declaratory Judgments Act, without exhaustion of administrative remedies, because the constitutionality of the statute under which Appellee acted was challenged?

III. Does the Circuit Court for Baltimore County have jurisdiction over this dispute under the Uniform Declaratory Judgments Act, without exhaustion of remedies, because there was no adequate administrative remedy available to Appellant?

IV. Does Baltimore County Code § 33–137 violate Appellant's right to due process of law pursuant to the provisions of Article 24 of the Maryland Declaration of Rights, and the Fifth and Fourteenth Amendments to the United States Constitution?

V. Did Appellee erroneously assess and/or calculate the local transfer tax?

For the reasons that follow, we conclude that appellant did not have an available administrative remedy, and therefore was entitled to litigate its claim in circuit court. Accordingly, we shall vacate the circuit court's order granting appellee's motion to dismiss, and remand for further proceedings.

## Factual Summary

Abington is a limited partnership organized pursuant to the laws of Connecticut. Appellee is a body politic, organized and existing under the laws of the State of Maryland.

The case arises from a series of conveyances with respect to a parcel of land situated in Baltimore County, containing approximately 6.5 acres (the "Land"). Hechinger Company ("Hechinger") acquired fee simple title to the unimproved

Land in 1981. The Land has since been improved by a shopping center (the "Improvements"). After Hechinger reserved to itself an estate for years to June 1, 2005 with respect to the Land, and fee simple title to the Improvements, it conveyed the fee simple remainder interest in the Land to Penmar Holdings Company, Inc. ("Penmar"), by Deed dated December 1, 1982, for the sum of $30,000.00. Through an unrecorded deed dated December 1, 1982, Hechinger conveyed to Mary Penn Properties, Inc. ("Mary Penn") its estate for years in the Land and its fee simple interest in the Improvements. Also on that date, through an unrecorded agreement, Hechinger agreed to hold title to the estate for years in the Land and the fee simple title to the Improvements, as agent and nominee for Mary Penn. In an unrecorded lease agreement, Mary Penn then leased the property back to Hechinger on the same date.

Appellant acquired title to the estate for years in the Land and fee simple title to the Improvements by a deed from Hechinger dated April 1, 1983. Abington paid a transfer tax to the County in connection with that transaction. Years later, on April 14, 1993, Mary Penn, without consideration, executed a Confirmatory Deed to confirm the prior conveyance by Hechinger to appellant of the reserved interest in the Land and Improvements. When the Confirmatory Deed was recorded, appellee determined that no local transfer tax was due, and stamped the Confirmatory Deed in the manner then provided by Baltimore County Code § 33–140 (1988 & Supp. 2).[1]

As a result of the above described transactions, appellant became the owner of an estate for years in the Land and the Improvements in fee simple. Penmar was the record owner of the fee simple remainder interest in the Land. Thereafter, by Deed dated November 10, 1993 (the "Remainder Deed"), Penmar sought to convey its remainder interest in the Land to appellant. Appellee, however, refused to accept the Remain-

---

1. At the relevant time, the County ordinances appeared in Supplements 2 and 6.

der Deed for recordation, because of an unrelated transfer tax dispute that is not the subject of this proceeding. That matter, however, led to another review of the Confirmatory Deed, as a result of which the County determined that it erroneously concluded that no local transfer tax was due upon the earlier recording of the Confirmatory Deed.

Appellee completed a "Revenue Division" form, dated November 30, 1993, which stated that papers submitted to appellee (presumably to record the Remainder Deed) were being returned for deficiencies. The deficiencies noted were:

TAXABLE CONVEYANCE, NOT EXEMPT. AMOUNT DUE $86,640.00 (SEE ATTACHED LIST OF EXEMPTIONS. Your check is short $83,840.00.

* * * * * *

OTHER 175,000.00 & 5,240,000.00 = 5,415,000.00 Total Consideration

\* Mortgages are consideration (per 33–130 Balto Co. Code) See also Council Bill 128–92.

PLEASE MAKE WHATEVER CORRECTIONS ARE CHECKED ABOVE AND RETURN ... *WITH YOUR DEED.*

On February 14, 1994, appellee sent appellant a letter concerning its position with respect to the transfer tax in issue. The letter stated in pertinent part:

You have presented for recordation a Deed (Deed) dated November 10, 1993 between Penmar, Grantor, and Abington, Grantee, containing 6.4940 acres of land for the consideration of $175,000.00.

The Deed reflects the purchase by Abington, the owner of the present possessory estate, of a reversionary interest in the subject project.

The Deed contains the following language:

"AND SPECIFICALLY EXCLUDING FROM THE GRANT HEREUNDER (i) an estate for years to and including June 1, 2005, in and to the Land, including the exclusive right to the possession and use of the Land, (ii)

fee simple title to any buildings, building fixtures and improvements ("Improvements") now or hereafter erected or located on the Land.

"It is the intent of the Grantor by virtue of this Deed to convey to the Grantee a remainder interest in the Land and to exclude from the conveyance hereunder fee simple title to the Improvements."

\* \* \* \* \* \*

The Deed contains language that publicized or gave constructive notice of an unrecorded lease which saves and excepts an estate for years and fee simple title to improvements thereon relating to a transfer of property on which no transfer tax was paid.

The recording of the Deed was denied and the County questioned the consideration of $175,000.00. We stated that a transfer tax should be paid on the $175,000.00, plus the $5,240,000.00 mortgage, or $5,415,000.00, that transfer tax being $86,640.00. We advised you that consideration includes the amount of any outstanding principal balance of any mortgage or deed of trust assumed by the purchaser/grantee. Tax Property Article 12–103(a), 13–203(a) and Sec. 33–130 of the Baltimore County Code.

\* \* \* \* \* \*

In addition, the Confirmatory Deed from Mary Penn to Abington, confirming "prior unrecorded instruments" was subject to a transfer tax based on Tax Property Article Sec. 13–205(c)(2) and Baltimore County Code, Section 33–133:

When any attornment agreement, memorandum of lease, assignment of lease, or other document publicizing or giving constructive notice of the existence of a lease which has not been recorded is presented for recording, the original lease must be presented and taxes paid thereon, if due, before the document may be recorded. Tax Property Articles 12–105(e)(2) and 13–205(c)(2).

*If you want to record the Deed and the Agreement, a transfer tax on the leasehold and reversionary interest in 6.9490 acres and improvements thereon, based on the*

*amount of the indebtedness of $5,240,000.00, plus $175,-000.00 in the amount of $5,415,000.00 must be paid.*

*Should you not wish to record these two (2) instruments, I am further advising the Office of Finance to subject the property transferred by the Confirmatory Deed conveying an estate for years and fee simple title to improvements thereon, and recorded among the Land Records of Baltimore County, to a lien, based on the outstanding mortgage assumed by Abington in the amount of $5,240,,000.00, [sic] pursuant to Section 33–137 of the Baltimore County Code . . [sic]*

(Emphasis added).

On June 9, 1994, the County Office of Finance assessed a transfer tax in the amount of $83,840,[2] and imposed a lien for unpaid taxes on the Land and Improvements. *See* Baltimore County Code § 33–127; § 33–137 (1988 & Supp. 6). Baltimore County Code, § 33–137 provides:

Any property transferred, by operation of law or otherwise, evidenced by written instrument recorded among the land records of the county and subject to transfer tax under this article shall be subject to a lien for the amount of said unpaid taxes which *shall be assessed against such property and collected in the same manner as ordinary real property taxes.*

(Emphasis added). If property taxes are not timely paid, the County Code requires that the County "shall proceed" to sell the property. Baltimore County Code, § 33–71 (1988).

Appellant filed a declaratory action on March 30, 1995, pursuant to the Uniform Declaratory Judgment Act, Maryland Code (1957, 1995 Repl.Vol.), § 3–401 *et seq.* of the Courts and Judicial Proceedings Article ("C.J."). Abington asserted that appellee unlawfully and erroneously assessed the transfer tax and unconstitutionally imposed the lien. At a hearing on

---

**2.** The transfer tax of $83,840.00 was $2,800.00 less than the $86,640.00 sum specified in the letter of February 14, 1994. Apparently, appellant received a credit for a check it had tendered to appellee, as noted on the "Revenue Division" form.

October 13, 1995, the court, *sua sponte*, questioned whether appellant should have first sought review of its claims in the Maryland Tax Court. This inquiry prompted appellee to move to dismiss the complaint for lack of jurisdiction. The court permitted the parties to submit legal memoranda on the issue.

Thereafter, without holding a hearing, the trial court granted the motion to dismiss. The following notation was entered on the docket:

June 4, 1996 Motion to Dismiss, GRANTED. Constitutional issues: Exhibit # 7, Stipulation of facts satifies [sic] notice issue 313MD 484[sic]; Administeative [sic] remedies not exhausted for statutes provide remedies especially 3–103, (EAD,JR.) Notices sent [sic]

We shall include additional facts in our discussion of the issues.

### The Parties' Contentions

Appellant levels numerous contentions to support its claim that the trial court erred in dismissing its case. It argues that, under the circumstances present here, the Tax Court lacked jurisdiction to resolve the dispute. It also claims that it has no available administrative remedies; Abington alleges that neither the State nor the County accords a right of appeal to the Tax Court in connection with the County's transfer tax cases. In this regard, appellant essentially claims that, since it has not voluntarily paid the tax under protest, and therefore does not seek a refund, the statutory scheme does not authorize it to pursue its challenge in Tax Court. It notes that no procedure exists in either the Tax–General Article or the Tax–Property Article of the Maryland Code, or in the Baltimore County Code, the Code of Maryland Regulations, or the Tax Court's rules of procedure, which enables Abington to litigate in the Tax Court the legality of an unpaid County transfer tax. Further, it contends that no provision required Abington to pay the transfer tax and then seek a refund in order to contest the tax.

Appellant also asserts that, even if it had paid the tax and then pursued a refund, it still would not have had a right of appeal to the Tax Court, because the County's transfer tax was not imposed pursuant to the Tax–Property or Tax–General article. Moreover, it asserts that the tax was not collected either by the State Department of Assessments and Taxation (the "Department") or a circuit court clerk, and thus a refund claim would not have been within the purview of the statutory provisions that govern refund claims in the Tax Court. Nevertheless, appellant's property is at risk; it is saddled with a lien and is exposed to a tax sale, because appellant has not paid the disputed transfer tax. Accordingly, it contends that it had no option but to initiate a suit in the circuit court, seeking declaratory and injunctive relief.

For its part, the County does not claim that, as a prerequisite to any right to challenge the legality of the transfer tax or the imposition of the lien, Abington was obligated to pay the disputed transfer tax and then seek a refund. Nor has the County identified what path or procedures appellant should have followed to reach the Tax Court, since it did not pay the tax and does not seek a refund. Instead, appellee rather summarily counters that the Tax Court's broad jurisdiction permits it to hear Abington's claim. In particular, the County argues that Maryland Code (1957, 1988 Repl.Vol.), Tax–General Article ("T.G."), § 3–103(a)(2), confers jurisdiction on the Tax Court to hear appeals from a final decision of a political subdivision "about any tax issue, including . . . the imposition of a tax." Since Abington has not proceeded administratively, the County claims that appellant failed to exhaust its administrative remedies, and its case was properly dismissed.

### Discussion

### I.

Notwithstanding its name, the Maryland Tax Court "is an independent administrative unit of the State government." T.G. § 3–102. *See Prince George's County v. Brown,* 334 Md. 650, 658 n. 1, 640 A.2d 1142 (1994); *Shipp v. Bevard,* 291 Md. 590, 435 A.2d 1114 (1981). Although the Tax Court is an

administrative agency, it "functions in many respects as a court." *White v. Prince George's County,* 282 Md. 641, 658, 387 A.2d 260 (1978); *see Shell Oil Co. v. Supervisor of Assessments,* 276 Md. 36, 343 A.2d 521 (1975). Its jurisdiction is broadly stated in T.G. § 3–103:

> (a) *In general.*—**The Tax Court has jurisdiction to hear appeals from the final decision,** final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of **a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue,** including:
>
> (1) the valuation, assessment, or classification of property:
>
> (2) **the imposition of a tax;**
>
> (3) the determination of a claim for refund;
>
> (4) the application for an abatement, reduction, or revision of any assessment or tax; or
>
> (5) the application for an exemption from any assessment or tax.

(Boldface added.)

Judicial review of a final decision of the Tax Court is afforded by T.G. § 13–532, which permits "[a]ny party to the Tax Court proceeding ... [to] appeal a final order of the Tax Court to the circuit court." Maryland Code (1957, 1994 Repl.Vol.), Tax–Property Article ("T.P."), § 14–513 is to the same effect. Thereafter, T.P. § 14–515 permits review by this Court of the circuit court's final decision.[3]

█ It is a longstanding principle that a party ordinarily may not pursue a declaratory or injunctive action in circuit

---

**3.** In 1985, in a report on what was then Senate Bill 1, the Commission to Revise the Annotated Code explained that it initially contemplated a single revised tax article. As the revision progressed, it became apparent that the revision of the tax laws was too large to be submitted at one time to the Legislature. Therefore, the tax laws pertaining to property and conveyances of property were separated from the rest of the tax law revision.

court until it has exhausted any available administrative remedies created by the Legislature. Indeed, the failure to exhaust administrative remedies is sometimes treated as a jurisdictional issue, and may be raised by an appellate court, *sua sponte*. *Maryland Comm'n on Human Relations v. Downey*, 110 Md.App. 493, 526 n. 11, 678 A.2d 55 (1996). We must resolve, then, whether T.G. § 3–103, which establishes the Tax Court's jurisdiction, also creates an administrative remedy that must be exhausted prior to the commencement of litigation challenging the tax.

The Uniform Declaratory Judgment Act (the "Act"), C.J. § 3–401 *et seq.*, provides a means "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." C.J. § 3–402. Since the Act is "remedial," it must "be liberally construed and administered," *id.*, so that the courts may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." C.J. § 3–403(a). Nevertheless, C.J. § 3–409(b) requires that when "a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle." *See also Maryland–National Capital Park & Planning Comm'n v. Washington Nat'l Arena*, 282 Md. 588, 596, 386 A.2d 1216 (1978); *Bancroft Information v. Comptroller*, 91 Md.App. 100, 114, 603 A.2d 1289 (1992); *Boyd v. Supervisor of Assessments of Baltimore City*, 57 Md.App. 603, 606, 471 A.2d 749 (1984); *Baltimore County v. Maryland Dep't of Assessments and Taxation*, 47 Md.App. 88, 91, 421 A.2d 993 (1980).

In *Prince George's County v. Blumberg*, 288 Md. 275, 284, 418 A.2d 1155 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981), the Court explained the rationale undergirding the exhaustion doctrine:

The principal reasons for this exhaustion requirement with respect to administrative bodies are manifest—(i) the issues are largely within the expertise of the involved agency to hear the evidence and determine the propriety of the request; (ii) the courts would be undertaking functions the legislature thought could best be performed by an agency;

and (iii) courts might be called upon to decide matters that would never arise if the prescribed administrative remedy was followed.

*McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) is to the same effect. There, the Supreme Court recognized that the exhaustion requirement prevents the possibility "that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.* at 195, 89 S.Ct. at 1663. "Exhaustion" helps to prevent potentially unnecessary and premature disruption by the courts of the activities of administrative agencies. *Downey,* 110 Md. App. at 528, 678 A.2d 55. *See also State Dep't of Assessments & Taxation v. Clark,* 281 Md. 385, 401, 380 A.2d 28 (1977) (acknowledging the "firmly established rule that ordinarily when an administrative remedy is provided by statute, relief provided under those statutory provisions must be exhausted before a litigant may resort to the courts. That is, such a remedy is exclusive, and the administrative body must not be by-passed by the pursuit of other remedies.").

Issues concerning taxation are not excepted. In *Washington Nat'l Arena,* the Court made clear that taxpayers, too, must pursue their administrative remedies. The Court said: "[W]e have repeatedly held that *where a specific statutory remedy is available,* it is mandatory for the court to dismiss the suit for declaratory judgment and remit the plaintiff to the alternative forum." *Washington Nat'l Arena,* 282 Md. at 595, 386 A.2d 1216 (emphasis added). When a taxpayer fails to exercise a statutory right of appeal from "allegedly illegal or erroneous tax assessments," it may not launch a declaratory judgment action as a "collateral attack." *Id.* at 598, 386 A.2d 1216.

Nevertheless, exhaustion is not an "absolute" doctrine barring "recourse" to the courts. *Poe v. City of Baltimore,* 241 Md. 303, 308, 216 A.2d 707 (1966). Limited exceptions to the exhaustion doctrine permit a party, in tax matters and other kinds of cases, to pursue alternative forms of relief in

court, even without exhausting administrative remedies. These include: (1) when the party attacks the statutory scheme as facially unconstitutional; (2) when there is no administrative remedy; or (3) when the administrative remedy provided by the statutory scheme is inadequate. *See Blumberg,* 288 Md. at 284–85, 418 A.2d 1155; *Pressman v. State Tax Commission,* 204 Md. 78, 84, 102 A.2d 821 (1954); *Baltimore County,* 47 Md.App. at 91–92, 421 A.2d 993.

■ Exhaustion is required, however, if "the administrative remedy is adequate," *Poe,* 241 Md. at 308, 216 A.2d 707, and when the constitutional challenge is based only on the *application* of a statute in a particular situation. The Court explained in *Poe:*

> "[T]he presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention. But ... this rule is not one of mere convenience.... Where the intent of [the Legislature] is clear to require administrative determination, either to the exclusion of judicial action or in advance of it, a strong showing is required, both of inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process. [The Legislature's] commands for judicial restraint in this respect are not lightly to be disregarded."

*Poe,* 241 Md. at 310–11, 216 A.2d 707 (quoting *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 773–74, 67 S.Ct. 1493, 1503–04, 91 L.Ed. 1796 (1947)).

## II.

Title 13 of the Tax–Property Article applies to State and county transfer taxes. *See* T.P. § 13–101 for definitions and general provisions. T.P. § 13–402(b) provides that Subtitle 4, which concerns a transfer tax imposed by a county, supple-

ments a county's public local laws relating to transfer taxes. Baltimore County is a charter county, pursuant to its adoption of a charter in 1956 under Article XI–A of the Maryland Constitution. *See Hampton Associates Ltd. Partnership v. Baltimore County,* 66 Md. App. 551, 566, 505 A.2d 537 (1986). Appellee's authority to impose transfer taxes arises from Baltimore County, Md., Public Local laws, Title 27, § 412A (1953), codified at 1953 Laws of Md. ch. 769. Section 13–402.1 of the Tax–Property Article expressly permits a county with home rule powers under Article XI–F of the Maryland Constitution to impose transfer taxes.

■ Various statutory tax provisions expressly address a right of appeal to the Tax Court. But those provisions are not applicable here. For example, T.G. § 13–510 permits appeals to the Tax Court for review of tax assessments, determinations, and refund requests in connection with *taxes imposed under the Tax–General Article.* It states:

(a) *In general.*—Except as provided in subsection (b) of this section and subject to § 13–514 of this subtitle, within 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from:

(1) a final assessment of tax, interest, or penalty *under this article;*

(2) a final determination on an application for revision or claim for refund under § 13–509 *of this subtitle;*

(3) an inheritance tax determination by a register or by an orphans' court other than a circuit court sitting as an orphans' court;

(4) a denial of an alternative payment schedule for inheritance tax or Maryland estate tax;

(5) a final determination on a claim for return of seized property under § 13–839 or § 13–840 of this title; or

(6) a disallowance of a claim for refund *under* § 13–904 of this title.

(Emphasis added). The County's transfer taxes, however, are locally imposed; it is undisputed that they are not assessed pursuant to the Tax–General Article. Therefore, T.G. § 13–510 does not apply here.

In T.P. §§ 14–512(a) and (b), the Legislature enacted a mechanism to enable taxpayers to appeal tax "determinations" to the Tax Court. These provisions, however, only govern determinations made by the Department, not the County.

The Tax Court is also expressly authorized to review on appeal a transfer tax *refund* dispute, pursuant to T.P. §§ 14–512(d), 14–908, and 14–911. These sections establish a right of appeal to the Tax Court with respect to refund claims for transfer taxes collected or assessed by the Department, the clerk of a circuit court, or the Director of Finance for Prince George's County. T.P. § 14–908 states:

> A person who submits a written refund claim for transfer tax that has been erroneously or mistakenly paid to or illegally or erroneously assessed or wrongfully collected by the clerk of a circuit court, the Director of Finance in Prince George's County, or the Department, or paid on property exempt wholly or partly from the transfer tax is eligible for a refund from the Department, clerk, or Director of Finance that collected the transfer tax.

Section 14–512(d), which refers to T.P. § 14–908, provides: *From recordation or transfer tax refund determination.—* The person who submitted a tax refund claim under § 14–907[4] or § 14–908 of this title may appeal any final action taken under § 14–911[5] of this title to the Maryland Tax Court on or before 30 days from the date that the notice of disallowance is received by the person. However, if a refund claim under § 14–911 of this title is not allowed or

---

**4.** T.P. § 14–907 concerns refunds for recordation taxes, which are not at issue in this case.

**5.** T.P. § 14–911 specifies the procedures governing refund determinations generally, including the effect of inaction on a transfer tax refund claim by the entity that collected the tax.

disallowed on or before 6 months from the date of filing the claim, the person who filed the claim may:

 (1) deem the claim to be finally disallowed; and

 (2) submit an appeal to the Maryland Tax Court.

Appellant argues that these two provisions are inapplicable because: 1) T.P. § 14–908 applies only to State transfer taxes, not local transfer taxes; 2) T.P. § 14–908 applies only when the transfer tax has been paid to, assessed, or collected by a circuit court clerk, the Department, or the Director of Finance in Prince George's County, but County transfer taxes are paid to the County at the office of its director of finance, see Baltimore County Code § 33–127 (1998 & Supp. 6); 3) the provisions apply only to refund claims, but this is not a refund action; 4) the County has no mechanism for a taxpayer to pay a disputed tax and then seek a refund;[6] and 5) even if appellant could elect to pay the tax, under protest, and then seek a refund, such a procedure is not mandatory. Therefore, Abington urges that it was entitled to pursue its claims in court.

As to appellant's contention that T.P. § 14–908 pertains only to State transfer taxes, not to local transfer taxes, it is patently clear from the statutory language that the provision is not limited to State transfer taxes. Nevertheless, the

---

6. An article in MARYLAND TAXES suggests that a taxpayer seeking a refund of county transfer taxes should inquire of the circuit court clerk as to the procedure for the specific county, and follow the procedures outlined in the Tax–Property Article for a refund of State transfer taxes. Neal D. Borden, Robert A. Rombro, and Charles C. Shelton, *Transfer Taxes, in* MARYLAND TAXES 17–22 (1984).

Interestingly, review of the record reflects that previously, by letter dated December 29, 1982 to the County Director of Finance, Penmar and Hechinger contested the County's determination of an unrelated transfer tax. Nevertheless, that transfer tax was paid under protest and a demand was made for a refund. In a letter dated January 5, 1983, the County Director of the Office of Finance informed the parties that it would hold a hearing to review the refund request.

Appellant, however, apparently never attempted to avail itself of such an avenue. The record does not reveal Abington's reasons. While the tax involved here is sizeable, there is no suggestion in the record that appellant could not afford to pay the transfer tax pending resolution of the dispute.

precise statutory language of T.P. § 14–908 seems to apply only if a county's transfer taxes are "paid to or . . . assessed or . . . collected by the clerk of a circuit court . . . or the Department. . . ." T.P. § 14–908.[7] Yet the County's transfer taxes are payable "to the county at the office of the director of finance in the county courthouse," pursuant to Baltimore County Code § 33–127(a) (1988 & Supp. 6).

For virtually all of the counties that impose transfer taxes, the taxes are paid to a circuit court clerk.[8] Our research reveals, however, that four counties—Baltimore, Montgomery, Prince George's, and Worcester—designate some entity other than a circuit court clerk to collect the tax. As to Prince George's County, T.P. § 14–908 expressly recognizes its procedure, by which its taxes are collected by its Director of Finance. But a literal construction of T.P. § 14–908 would bar taxpayers in Baltimore, Montgomery, and Worcester counties from an appeal to the Tax Court with regard to a refund claim for county transfer taxes.[9] *Compare* Allegany County Code § 182–12 (1996); Anne Arundel County Code § 7–101(d) (1996); Caroline County Code § 166–8 (1996); Dorchester County Code, Resolution No. 195 ( June 21, 1994);

---

7. Compare T.P. § 14–908 with T.P. 14–905(a), which applies to a refund claim for property tax imposed by a county or municipal corporation. ("A person who submits a written refund claim to the *appropriate collector* for . . . property tax erroneously or mistakenly paid to the collector. . . .") (Emphasis added.)

8. According to the most recent county codes available to us, Calvert, Carroll, Cecil, Charles, Frederick, Queen Anne's, Somerset, Talbot, Washington, and Wicomico counties do not impose county transfer taxes.

9. We note that while Montgomery County transfer taxes are paid to the County's Director of Finance, pursuant to that county's Code, and not to a circuit court clerk, in at least two reported opinions involving refund requests for Montgomery County transfer taxes, taxpayers have obtained review in the Tax Court of the denial of the refund before bringing their claims in the law courts. See *Dean v. Director of Finance of Montgomery County,* 96 Md.App. 80, 623 A.2d 707 (1993) (farmland transfer tax levied pursuant to Montgomery County Code); *Maisel v. Montgomery County,* 94 Md.App. 31, 614 A.2d 1333 (1992) (county rezoning transfer tax).

Garrett County Code § 263–25 (1996); Harford County Code § 123–51 (1996); Howard County Code § 20.404 (1997); Kent County Code § 152–13 (1996); St. Mary's County Code § 267–34 (1996) *with* Baltimore County Code § 33–127 (1996) ("The payment of the [transfer] tax imposed by this article shall be made to the county at the office of the director of finance in the county courthouse...."); Montgomery County Code § 52–28 (1994) ("The [transfer] tax shall be paid to the county at the office of the director of finance...."); Prince George's County Code § 10–189 (1996) ("The party offering for recording an instrument in writing transferring title to real property or an interest therein, in the County shall pay the tax imposed to the Director of Finance."); Worcester County Code § TR 1–801(c) (1996) ("The county transfer tax shall be collected upon presentation of the instrument of writing to the County Finance Officer prior to the recordation thereof....").

It is difficult to conceive of any reason why the Legislature would have intended to omit Baltimore, Montgomery, and Worcester counties from the purview of T.P. § 14–908. While we discuss, *infra*, the principles of statutory construction, it is sufficient to note here that "the plain meaning rule is not rigid." *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). Although the courts may not "rewrite a statute merely because of some judicial notion of legislative purpose," *id.* at 516 n. 4, 525 A.2d 628, we may consider evidence of legislative purpose and intent "beyond the plain language of the statute." *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339 (1996). Therefore, when the Legislature's purpose and "intent can be ascertained it will prevail over precise grammatical construction or literal intent...." *Kaczorowski*, 309 Md. at 516 n. 4, 525 A.2d 628. *See also Potter v. Bethesda Fire Dep't*, 309 Md. 347, 353, 524 A.2d 61 (1987). Here, the legislative history does not reflect that the Legislature intended to omit taxpayers in these three counties from the protections statutorily afforded to other taxpayers. This conclusion is supported by a review of the evolution of the statutory provision.

In *Rapley v. Montgomery County,* 261 Md. 98, 274 A.2d 124 (1971), the Court determined that Code (1957, 1969 Repl.Vol.), Article 81, §§ 213–219 did not authorize taxpayers to recover, through refund actions, special taxes (*i.e.,* transfer or recordation tax) that were voluntarily paid, under protest, to the County. The statute permitted a refund action only for such taxes paid to the *State.* Because of the "absence of express legislative sanction . . . ." for the taxpayers' action, *id.* at 100, 274 A.2d 124, and the lack of a common law right to recover taxes that have been voluntarily paid, the county taxpayers were denied recovery. Thereafter, the Legislature amended Art. 81 to provide for refund actions in connection with special taxes paid to any county authorized to collect such tax. 1971 Md.Laws ch. 644; *see also White,* 282 Md. at 648 n. 4, 387 A.2d 260.

These changes remained in effect until 1985, when the Legislature recodified the tax provisions of the Maryland Code, creating the Tax–Property Article. During the recodification process, some changes were made to the language of T.P. § 14–908. In place of the phrase "any State, county or municipal agency authorized to collect [special taxes]," which was used in Art. 81, § 215, as revised, the Legislature substituted language authorizing a taxpayer to request a refund of a transfer tax erroneously paid to, assessed, or wrongfully collected by "the clerk of a circuit court, the Director of Finance in Prince George's County, or the Department. . . ."

Nevertheless, the legislative history suggests that the substituted language was not intended to alter the scope of Art. 81. The revisor's note to T.P. § 14–908 states that the change in the section's language was implemented "to identify specifically to whom the transfer tax is paid." *See Allers v. Tittsworth,* 269 Md. 677, 683, 309 A.2d 476 (1973) (stating that the revisor's construction is a factor to be considered in determining legislative intent). Absent a manifest intent to the contrary, we normally presume that when the Legislature recodifies a statute, it is for the purpose of clarity, and does not result in a substantive change in the law. *Rohrbaugh v. Estate of Stern,* 305 Md. 443, 449, 505 A.2d 113 (1986); *Welch*

*v. Humphrey,* 200 Md. 410, 417, 90 A.2d 686 (1952) (stating that recodification changes are presumed to be for the purpose of clarification only, "unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code").

 We need not decide, however, whether the change in language brought about by the 1985 recodification removed the County's transfer taxes from the scope of T.P. § 14–908 and, consequently, T.P. § 14–512(d). This is because T.P. §§ 14–512(d) and 14–908 only apply when transfer taxes have been paid and a *refund* is sought. As appellant has not paid the disputed taxes, and does not seek a refund, these provisions are inapplicable in any event.

## III.

In the ordinary course, a property tax dispute is usually litigated through a refund action; in this way, the property owner avoids the risk of a lien and tax sale.[10] This is not to say, though, that a refund action is the only avenue of recourse available to a taxpayer seeking to challenge a particular tax. Indeed, we have not been made aware of any State statute or local ordinance that *mandates* resolution of a County transfer tax dispute by way of a refund action. Nor has the County referred us to any statutory provision that specifically pertains to administrative appeals with regard to transfer tax disputes when the tax is not paid. This suggests that, even if a County taxpayer could elect to pay the tax and then pursue a refund, alternative actions are not necessarily foreclosed.

---

**10.** In *Brown v. Montgomery County,* 30 Md.App. 107, 112, 351 A.2d 156 (1976), we recognized a county's duty to sell the property of delinquent taxpayers. We therefore declined to stay the obligation to pay property taxes, based on a final assessment, pending an appeal. Although the property owners filed suit, seeking injunctive and declaratory relief, and argued that they were entitled to exhaust their rights in court, we disagreed, stating: "[I]f the law were as appellants would have it, the capability of the taxing authority to perform its public functions could be brought to a standstill by mass appeals. The potential harm of such a rule is intolerable to government." *Id.* at 109–10, 351 A.2d 156.

As we observed, the County relies on T.G. § 3–103(a)(2) to support its claim that the Tax Court has jurisdiction to hear matters like the one *sub judice*, and thus appellant was obligated to proceed in the Tax Court. Appellant vigorously opposes the County's contention. Fundamental to appellant's argument is its claim that T.G. § 3–103 does not confer jurisdiction upon the Tax Court to resolve this matter. It argues:

> The use of these broad generic terms is illusory ... for the general grant of jurisdiction can only be given substance with applicable enabling and implementation statutes. While the Maryland Legislature has implemented the broad jurisdictional grant by establishing specific processes for appeal of specific tax disputes to the Maryland Tax Court, MD.CODE ANN., TAX–PROP. § 14–512 (1994 Repl.Vol.) and MD.CODE ANN., TAX–GEN. § 13–510 (1996 Supp.), these processes do not include appeals of local transfer tax disputes. As neither the Maryland Legislature nor the Baltimore County Council have enacted any statute or ordinance to establish a process for appeal of local transfer tax issues to the Maryland Tax Court, the broad jurisdictional grant has not been implemented for such matters.

■ T.G. § 3–103 is unlike the tax provisions that we reviewed earlier, because it does not specify how or when a challenge may be lodged. Instead, this provision states only generally, albeit broadly, the kinds of matters over which the Tax Court has jurisdiction. In order to reach the result urged by the County, we would have to conclude that T.G. § 3–103 creates an administrative remedy in the Tax Court to address the legality of an unpaid transfer tax. In our view, such a construction would engraft upon the statute a meaning not evident from either its language or the statutory purpose. Moreover, it would require us to ignore well honed principles of statutory construction. This we decline to do. Instead, we conclude that T.G. § 3–103 does not confer jurisdiction to resolve this dispute. It neither authorizes, permits, nor compels appellant to initiate its challenge in the Tax Court regarding the legality of the County's transfer tax or the imposition

of the lien, because appellant has not paid the disputed transfer tax. We explain.

The "cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intention." *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188 (1990); *see also Klingenberg v. Klingenberg,* 342 Md. 315, 327, 675 A.2d 551 (1996); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995); *Mayor and City Council of Baltimore v. Cassidy,* 338 Md. 88, 656 A.2d 757 (1995); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994); *Condon v. State,* 332 Md. 481, 632 A.2d 753 (1993); *Blitz v. Beth Addis Isaac Synagogue,* 115 Md.App. 460, 478–79, 694 A.2d 107 (1997); *see also Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81 (1996); *Stapleford Hall Joint Venture v. Hyatt,* 330 Md. 388, 400, 624 A.2d 526 (1993); *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761 (1990). The statutory language is our "primary source" to determine legislative intent. *Klingenberg,* 342 Md. at 327, 675 A.2d 551; *Privette,* 320 Md. at 744, 580 A.2d 188. In this regard, we ascribe to the words used in the statute " 'their ordinary and popularly understood meaning, absent a manifest contrary legislative intention.' " *Klingenberg,* 342 Md. at 327, 675 A.2d 551 (quoting *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313 (1984)); *see also Buckman,* 333 Md. at 523, 636 A.2d 448; *Thanos v. State,* 332 Md. 511, 523, 632 A.2d 768 (1993); *Privette,* 320 Md. at 744, 580 A.2d 188; *Harford County v. University of Maryland Medical Sys. Corp.,* 318 Md. 525, 529, 569 A.2d 649 (1990). When a statute is unambiguous, the "courts may not disregard the natural import of the words used in order to extend or limit its meaning." *Privette,* 320 Md. at 745, 580 A.2d 188. *See also Board of Trustees of Md. State Retirement & Pension Sys. v. Hughes,* 340 Md. 1, 7–8, 664 A.2d 1250 (1995); *Buckman,* 333 Md. at 523, 636 A.2d 448. Therefore, "[i]f the statutory language is plain and free of ambiguity and has a definite and sensible meaning, it is conclusively presumed to be the meaning of the legislative body in enacting the statute." *Town of Somerset v. Montgomery County Bd. of Appeals,* 245 Md. 52, 71, 225 A.2d 294 (1966).

A statute must be read as a whole, so that all provisions are considered together and, to the extent possible, reconciled, and harmonized. *See Curran v. Price*, 334 Md. 149, 172, 638 A.2d 93 (1994); *Condon*, 332 Md. at 491, 632 A.2d 753; *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 589 A.2d 944 (1991); *Brzowski v. Maryland Home Improvement Comm'n*, 114 Md.App. 615, 705, 691 A.2d 699 (1997); *Boyd v. Hickman*, 114 Md.App. 108, 122 n. 9, 689 A.2d 106 (1997). Further, "under the guise of construction, [we may not] supply omissions or remedy possible defects in the statute, or ... insert exceptions not made by the Legislature." *Amalgamated Cas. Ins. Co. v. Helms*, 239 Md. 529, 536, 212 A.2d 311 (1965); *see also Blitz*, at 479–480, 694 A.2d at 116; *McNeil v. State*, 112 Md.App. 434, 451–52, 685 A.2d 839 (1996). This means that we may not read into a statute a meaning that is not expressly stated or clearly implied. Nor may we embellish a statutory provision so as to enlarge its meaning. *See Blitz*, at 480, 694 A.2d at 116; *Department of Economic & Employment Dev. v. Taylor*, 108 Md.App. 250, 277, 671 A.2d 523 (1996); *Taylor v. Mayor and City Council of Baltimore*, 51 Md.App. 435, 447, 443 A.2d 657 (1982). Instead, we must "give effect to that intention regardless of the consequences, even though such effect may cause a hardship. Simply put, a court construing an unambiguous statute must view the law as it is, and not as it might wish it to be." *Brzowski*, 114 Md.App. at 705, 691 A.2d 699 (citations omitted).

We acknowledge that the plain meaning rule does not necessarily require a reviewing court to ignore or disregard the Legislature's intent and purpose, when that intent and purpose is readily known. Similarly, it does not necessarily compel a literal construction of a statutory provision. *Kaczorowski*, 309 Md. at 516, 525 A.2d 628. Nevertheless, this principle does not alter our construction of T.G. § 3–103.

An understanding of the origin of Maryland's legislative enactments creating taxpayer refund actions lends support to our view that T.G. § 3–103 does not confer an administrative remedy that extends to the circumstances attendant here. We pause to review a taxpayer's common law rights. At

common law, if a taxpayer voluntarily paid a disputed tax, under protest, the taxpayer was barred from recouping the amount of the tax, unless a statute expressly sanctioned recovery. *Rapley*, 261 Md. at 103, 274 A.2d 124. Ordinarily, the taxpayer could only challenge the tax when it remained unpaid.

In *Lester v. City of Baltimore*, 29 Md. 415 (1868), the taxpayer brought an action in assumpsit to recover a disputed tax, claiming it was paid under compulsion to prevent the sale of his property. Although the assessment was found to be illegally imposed, recovery was nonetheless denied. The Court said:

> No principle is better settled than that where a person, with full knowledge of the *facts, voluntarily* pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, as appears to have been the case in this instance, it will not be considered as paid by compulsion, and the party thus paying, is not entitled to recover, though he may have protested against the unfounded claim at the time of payment made.

*Id.* at 418; *compare Baltimore v. Porter*, 18 Md. 284 (1862) (concluding that, because tax had not been paid, taxpayer could challenge the identical type of tax assessment through injunction proceedings). Similarly, in *Rapley*, 261 Md. at 103, 274 A.2d 124, the Court stated that without an "express statutory warrant, we have laid a heavy hand on actions brought at law to recover taxes paid, even if paid under protest, when the taxpayer made payment without seeking injunctive relief to test the validity of the imposition."

Thereafter, in *White v. Prince George's County*, 282 Md. 641, 653, 387 A.2d 260 (1978), the Court reaffirmed the principle that "an ordinary civil action does not lie in Maryland for the recovery of taxes voluntarily paid under a mistake of law. . . . ." The Court carefully explained:

> More than one hundred and thirty years ago . . . this Court . . . reverse[d] a judgment in favor of the plaintiff and against the City for that sum of money on the ground that

money demanded and voluntarily paid "cannot be recovered back in a Court of law, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party." . . .

\* \* \* \* \* \*

These holdings have been reaffirmed in an unbroken line of cases. In point is *Wasena Housing Corp. v. Levay, supra,* 188 Md. 383 [52 A.2d 903] [ (1947) ], where a taxpayer brought an action at law to recover taxes erroneously paid, and this Court, in affirming a judgment in favor of the defendant government officials, stated that "[a]ll refunds of State taxes are matters of grace with the Legislature" (188 Md. at 389 [52 A.2d 903]) and that the statutory remedies were "exclusive in this type of case." (*Id.* at 394 [52 A.2d 903].) The Court in *Wasena* pointed out that recovery could not be had on the theory that the tax officials made a "mistake of fact," as "[a]t common law recovery of money paid under a mistake of fact is limited to money paid or received under a mistake [of fact] on the plaintiff's part, or a mutual mistake [of fact] . . ." (*id.* at 387 [52 A.2d 903]). The Court also repeated the holding of the *Lester* case that "payment under protest, under threat and advertisement of sale, is a voluntary payment . . ." (*id.* at 388 [52 A.2d 903]). *White,* 282 Md. at 651–52, 387 A.2d 260 (some citations omitted).[11]

The voluntary payment rule clearly put taxpayers in a "catch-22" situation. When the taxpayer paid the disputed

---

11. When the taxpayer paid under threat of immediate harm or duress to person or property, the taxpayer usually could recover the taxes in an action at law, since such a payment was considered involuntary. *See City of Baltimore v. Lefferman,* 4 Gill 425 (1846) ("We consider, therefore, the doctrine as established, that a payment is not to be regarded as compulsory, unless made to emancipate the person or property, from an actual and existing duress, imposed upon it by the party, to whom the money is paid"); *see also Martin G. Imbach Inc. v. Deegan,* 208 Md. 115, 117 A.2d 864 (1955) (holding that appellant's payment of poundage fees was not voluntary, when appellant paid the fee to prevent a sheriff from attaching and taking away equipment belonging to appellant's business in satisfaction of a prior judgment).

tax, even under protest, in order to protect his property from a tax sale, he could not recover, based on voluntary payment principles. On the other hand, if the taxpayer failed to pay the tax, he could challenge the tax in court, but risked a forced sale of his property. Refund actions, which are creatures of statute in Maryland, were enacted in response to the harshness of the common law, which precluded a taxpayer from recovering taxes that were voluntarily paid. In *Baltimore County v. Xerox Corp.*, 286 Md. 220, 226, 406 A.2d 917 (1979), the Court explained: "Without doubt the refund provisions ... were enacted to modify the common law rule which established barriers to the recovery of taxes paid, presumably due originally to the reluctance of the sovereign to disgorge what had been given it." *See also White*, 282 Md. at 647, 387 A.2d 260 ("The Maryland Legislature has ... provided a comprehensive remedial scheme for the refund of taxes erroneously paid.").

"The Maryland law respecting the recovery of taxes is an interesting mosaic of statutes and decisions which evolved slowly during the nineteenth century and only commenced to offer a modern and comprehensive mechanism in 1929." *Rapley*, 261 Md. at 104, 274 A.2d 124. In that year, a comprehensive statutory scheme was implemented for the recovery of taxes erroneously paid. Chapter 226 of the Laws of 1929. Sections 152 and 153 of the 1929 Act provided "the manner in which recovery could be had from the State and the counties...." *Rapley*, 261 Md. at 109, 274 A.2d 124.

The refund provisions obviously benefited taxpayers who would have been denied refunds under the voluntary payment doctrine. As a result, a taxpayer could safely pay a disputed tax without jeopardizing the right to recover a refund if the taxpayer's contentions were later found meritorious. At the same time, the taxpayer could avoid exposing his property to a tax sale. There was, however, no necessity to codify a taxpay-

er's existing rights to challenge an unpaid tax.[12] Apart from a consideration of the origin of the refund provisions, several cases also strengthen our view that T.G. § 3–103 does not constitute an administrative remedy.

In *Montgomery Co. Council v. Supervisor*, 275 Md. 339, 340 A.2d 302 (1975), the Court construed various statutory clauses in former Articles 41 and 81 of the Maryland Code, to resolve whether the Tax Court had jurisdiction to review a determination made pursuant to Maryland Code (1957, 1975 Repl.Vol.), Article 81, § 67. Section 67 permitted a discretionary decrease in an assessment, after the date of finality, in order to prevent an injustice. Both the Tax Court and the Court of Appeals concluded that the Tax Court had no jurisdiction in § 67 proceedings.

Maryland Code (1957, 1971 Repl.Vol.), Article 41, § 318 provided, in language similar to that now found in T.G. § 3–103, that "the Maryland Tax Court shall have jurisdiction to hear appeals from the decision, determination, or order of any final assessing or taxing authority of the State, or of any agency, department, or political subdivision thereof, with respect to the valuation, assessment, or classification of property, or the levy of a tax, or with respect to the application for an abatement or reduction of any assessment, or tax, or exemption therefrom." Like the County here, the appellants asserted that § 318 gave the Tax Court broad jurisdiction and authorized it to resolve property tax assessment appeals in connection with § 67. *Montgomery Co.*, 275 Md. at 346, 340

---

**12.** Code 1939 Art. 81, § 162 leads us to believe that the refund mechanism was implemented to protect taxpayers who had no other avenue of recourse; a taxpayer who did not pay a disputed tax and had a right to litigate the validity of the tax in court would not have required a refund mechanism. *The section authorized a taxpayer to apply for a refund if he erroneously paid to any County or Baltimore City "more money for local taxes or other charges than was properly and legally chargeable...."* But, § 162 also stated "that no refund shall be made or approved in any case where a remedy by way of appeal or otherwise was provided by law for challenging the amount or validity ... of such tax...." We have not found similar provision since the 1939 enactment.

A.2d 302. In rejecting this argument, the Court considered Art. 81, § 256, which provided that appeals as to property tax assessments are from actions of the final assessing authority under Art. 81, § 255. That section also required a timely tax protest. In contrast, Art. 81, §§ 255, 256, and 67 did not provide for appeals to the Tax Court based on the grant or denial of relief under Art. 81, § 67.

The Court reasoned that the Legislature did not intend Art. 41, § 318 "to expand the jurisdiction of the Tax Court beyond that described in the various provisions of Art. 81, the tax article of the Code.... It would seem that the purpose of § 318 ... was to describe the new organization [creating two new agencies, the Tax Court and the Department of Assessments and Taxation] but not to expand or diminish the specific powers in the field of taxation...." *Montgomery Co.*, 275 Md. at 347–48, 340 A.2d 302. Moreover, the Court determined that the language in Art. 41, § 318 "referring to the jurisdiction of the Tax Court was ... descriptive only," *id.* at 348, 340 A.2d 302, and Art. 81, § 224 created the Maryland Tax Court with "the powers and duties in this article specified." *Montgomery Co.*, 275 Md. at 348, 340 A.2d 302. Even if § 318 constituted a grant of appellate jurisdiction, the result would be the same. Consequently, the Court determined that § 318 did not give the Tax Court broader jurisdiction than what was specifically provided in § 256. *Montgomery Co.*, 275 Md. at 348, 340 A.2d 302.

The case of *State Dep't. of Assessments and Taxation v. Clark*, 281 Md. 385, 380 A.2d 28 (1977), is also instructive. In that case, the Court concluded that there was "no statutory authority giving a circuit court jurisdiction, by way of a declaratory judgment or otherwise, over the propriety of a grant or denial of a reduction in a real property assessment under § 67." *Id.* at 396, 380 A.2d 28. As the taxpayers exhausted any available administrative remedies, the trial court only had inherent authority to review the taxpayers' claim challenging the constitutionality of the assessment. *Id.* at 411, 380 A.2d 28; *see also LaBelle v. State Tax Comm'n*,

217 Md. 443, 142 A.2d 560, *cert. denied,* 358 U.S. 889, 79 S.Ct. 135, 3 L.Ed.2d 117 (1958).

The analysis in these cases is persuasive. Like the language in former § 318, the language in T.G. 3–103 is merely descriptive. The cases suggest that we should not construe § 3–103 to expand the jurisdiction of the Tax Court beyond that which is specifically described and provided in other provisions. Since the Tax Court has certain delineated powers and duties, we agree that we cannot read into T.G. § 3–103 what is not there. Absent any indication of legislative intent to justify that course of action, such an interpretation could contravene well established rules of statutory construction.

## IV.

Neither the State nor the County specifically requires payment of the transfer tax as a precondition to resolving the tax dispute. Moreover, neither *expressly* provides for an administrative remedy, in the absence of payment of the disputed tax. Therefore, we must next address whether the refund scheme is, in any event, an exclusive remedy or, alternatively, whether Abington retains the right to initiate a court challenge with respect to an unpaid tax. "When there exists a special statutory remedy for the resolution of a particular matter, as well as an ordinary action at law or in equity, whether the special statutory remedy is exclusive, and preempts resort to the ordinary civil action, is basically a question of legislative intent." *White,* 282 Md. at 649, 387 A.2d 260. We are satisfied that the statutory refund remedy is not exclusive. In reaching this conclusion, we are persuaded by the reasoning of several cases, as well as our understanding of the legislative purpose in enacting the refund provisions.

It appears that the Legislature crafted the refund scheme to ameliorate the difficulties caused by the voluntary payment doctrine. *See Rapley,* 261 Md. at 103, 274 A.2d 124. In contrast, so long as a disputed tax remained unpaid, a taxpay-

er had an existing right—not statutorily based—to challenge a tax. Consequently, there was no legislative imperative to protect the taxpayer in that situation. Nevertheless, we are unaware of any indication, that, in enacting the refund provisions, the Legislature intended them to constitute an exclusive remedy. Nor is it apparent that the Legislature sought to abrogate existing rights and remedies, which permitted challenges in court to State or local taxes that were assessed, disputed, but not paid.

*Washington Suburban Sanitary Comm'n v. C.I. Mitchell & Best Co.*, 303 Md. 544, 495 A.2d 30 (1985), suggests to us that, when there is no specific administrative remedy, a taxpayer may file suit seeking to enjoin the collection of a tax. There, a developer paid to the Washington Suburban Sanitary Commission ("WSSC") a special connection charge for water and sewer service. Consequently, new home buyers and developers brought a class action seeking a declaratory judgment that WSSC lacked the legal power to impose the charges. They also sought refunds from the Commission for the charges and a declaration that the charges were unreasonable and void. The WSSC argued, *inter alia,* that the plaintiffs failed to exhaust their administrative remedies before the Public Service Commission ("PSC"). It relied on Code, Art. 29, § 6–110, which permitted an appeal to the PSC to "determine the reasonableness of any assessment, tax, levy, or service charge of the [WSSC]."

The Court observed that § 6–110 was not a general refund statute and the provision did not "embrace the issue of whether WSSC had statutory power to impose" the disputed charge. *Id.* at 555, 495 A.2d 30. Although the section created an administrative remedy, the Court recognized that the remedy was "limited to the 'reasonableness of any assessment, tax levy, or service charge of the WSSC.'" *Id.* at 559, 495 A.2d 30 (quoting Code, Art. 29 § 6–110). Indeed, the Court noted the "anomaly" that, while there was a statutory remedy providing for a challenge to the reasonableness of the rates, no administrative statutory remedy existed regarding the challenge to the agency's power to implement the charge. Based on the

statutory language and agency practice under § 6–110, the Court held that, because there was no special statutory remedy, "an original action for a declaratory judgment on the issue of the power of WSSC to adopt" the charges was not precluded. *Id.* at 561, 495 A.2d 30. Recognizing "the holding's asymmetry with basic administrative law principles," *id.* at 560, 495 A.2d 30, the Court nonetheless determined that the trial court had original jurisdiction to decide one issue, while the PSC was "statutorily designated as the agency initially to decide [the] issue" concerning the reasonableness of the fees. *Id.* at 562, 495 A.2d 30.

As to the refund issue, the Court affirmed Maryland common law precluding recovery of taxes voluntarily paid, under protest, absent a special statutory provision authorizing the right to pursue a refund. *Id.* at 572, 495 A.2d 30. Since the charges were voluntarily paid, and no statutory provision authorized a refund of the disputed charges, *id.* at 576, 495 A.2d 30, the Court determined that the plaintiffs could not recover. The Court noted, however, that an action in assumpsit is available to a taxpayer to recover taxes, when a statute changes the common law and sanctions a refund, but does not provide a special statutory remedy to recover the refund. *Id.* at 572, 495 A.2d 30; *see also White,* 282 Md. at 653 n. 7, 387 A.2d 260 ("Where a statute changed the common law rule and provided that the taxpayer was entitled to a refund but did not contain a special statutory remedy, this Court took the position that an action in assumpsit could be maintained."). On the other hand, if " 'there is statutory authorization for a refund and a special statutory remedy set forth, that remedy is exclusive.' " *WSSC,* 303 Md. at 572, 495 A.2d 30 (citations omitted); *see also Washington Nat'l Arena,* 282 Md. at 595, 386 A.2d 1216.

The Court also considered the circumstances under which payment is voluntary. Relying on prior cases, the Court reasoned that "the availability of an adequate remedy prevents a payment from being involuntary." *WSSC,* 303 Md. at 576, 495 A.2d 30. As an injunction remedy was available to prevent collection of the charges, even though there was no

statutory right to a refund, *id.* at 576, 495 A.2d 30, the payments were deemed voluntary; collection "could have been prevented by an injunction, in the absence of any other special remedy." *Id.* at 576, 495 A.2d 30.

*Apostol v. Anne Arundel County*, 288 Md. 667, 421 A.2d 582 (1980), also guides us. In that case, taxpayers from Annapolis challenged the County's property tax rate assessed upon residents of Annapolis, an incorporated city within the county. Under State law, the county could assess a lower tax upon city residents than county residents, because the city provided certain services to its residents, thereby relieving the county of the need to do so. Nevertheless, Annapolis residents were unhappy with the size of the reduction, and filed suit to recover taxes previously paid. The county asserted that the taxpayers were required to use the refund procedures in the predecessor to T.P. § 14–901 *et seq.*, before filing suit in the law court. The Court questioned, but did not resolve, whether the Legislature intended the statutory remedy of a refund action to constitute the exclusive means by which to challenge the taxes in issue. Since the taxpayers were subject to the voluntary payment doctrine, they were barred from pursuing their challenge in court. The Court said:

> Before the taxes were paid, the existence of the statutory remedy may have given rise to an issue of whether the Legislature intended to allow an action for injunctive and declaratory relief or whether it intended that the special statutory remedy supplant such action and be exclusive. . . . However, after the disputed taxes were paid, no issue concerning any possible legislative intent to supplant an existing common law or declaratory judgment remedy could arise. No such alternate common law or declaratory judgment remedy existed.

*Apostol*, 288 Md. at 674, 421 A.2d 582 (citations omitted).

Accordingly, the Court vacated the trial court's judgment that the tax statute was unconstitutional. Later, in *WSSC*, the Court expounded on what it had said in *Apostol*: "[O]nce the taxes were paid, the refund remedy necessarily became

exclusive because, under the voluntary payment rule, the declaratory judgment and injunction remedies had been extinguished." *WSSC,* 303 Md. at 577, 495 A.2d 30.

*Potomac Elec. Power v. Prince George's County,* 298 Md. 185, 468 A.2d 325 (1983), is to the same effect. Potomac Electric sued with respect to a county ordinance that taxed personal property at a higher rate than real property. During oral argument in the Court of Appeals, the Court learned that Potomac Electric had paid the disputed tax before trial. Consequently, it vacated the judgment and directed dismissal of the case, based on the voluntary payment rule, saying:

> In the *Apostol* case, where the taxpayers paid the demanded tax during the pendency of their suit for declaratory and injunctive relief, we held that "the payment of the tax *extinguished the plaintiffs' cause of action* " and that the bill of complaint should have been dismissed without a declaration of rights.

*Potomac Electric,* 298 Md. at 190–91, 468 A.2d 325 (emphasis added). Nonetheless, the Court suggested that a taxpayer may pursue an action for declaratory and injunctive relief, so long as the taxpayer has not paid the tax. *See also Baltimore v. Porter,* 18 Md. 284 (1862) (concluding that taxpayer who had not yet paid the tax assessment was entitled to challenge it by injunctive action).

The suggestions in *Apostol, WSSC,* and *Potomac Electric* that voluntary payment "extinguished" a cause of action presupposes that the cause of action was, at one time, viable. *WSSC* also makes clear that a statutory remedy may be available under some, but not all, circumstances, and it also may apply to one claim of a taxpayer, but not to all claims. Applying these principles here, we are of the view that had Abington pursued a refund action, it would not have been able to litigate its tax challenge until the administrative process was finalized. But, even if Abington could have elected to avail itself of the administrative scheme providing for review of a refund claim, it was not obligated to follow that path. The refund scheme does not necessarily foreclose the taxpay-

er's right to proceed in court in connection with non-refund claims that are not governed by the administrative scheme.

## Conclusion

Abington did not pay the transfer tax and does not seek a refund. Appellant claims that the County illegally and erroneously imposed the transfer tax and lien, and it has declined to pay the disputed tax. The administrative remedies that have been created for refund actions are not applicable or exclusive. In sum, the refund scheme does not bar Abington's right to pursue appropriate relief in circuit court, so long as it has not paid the disputed transfer tax. Accordingly, the circuit court erred in dismissing appellant's action.

**ORDER DISMISSING CASE VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY COSTS.**