R. E. BROWN et al. v. MONTGOMERY COUNTY, MARYLAND et al.

[No. 339, September Term, 1975.]

*Decided January 29, 1976.*

The cause was argued before POWERS, MOORE and LOWE, JJ.

*Dennis Ettlin,* with whom were *Rex L. Sturm* and *Brown & Sturm* on the brief, for appellants.

*H. Christopher Malone, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney for Montgomery County,* and *Robert G. Tobin, Deputy County Attorney* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Owners of real estate in Montgomery County raise in this appeal the narrow question of whether taxes based upon an assessed valuation made final by the Supervisor of Assessments may be collected while an appeal from that assessment is pending.

The issue was raised in a petition filed 18 September 1974 in the Circuit Court for Montgomery County by the property owners, styled as R. E. Brown individually and R. E. Brown and R. P. Brown, trustees under the will of Hatton D. Brown, against Montgomery County and its Director of Finance, seeking injunctive and declaratory relief. Numerous exhibits were attached to the petition. The County responded in a pleading [1] which the parties agreed put the case in an appropriate posture to be decided as a matter of law. All of the facts were supplied in the pleadings and their attachments or were otherwise agreed to, and there was no dispute of any fact material to the issue.

The significant facts are that the taxpayers received timely notice, late in 1972, of tentative assessments for the 1973 levy year of $12,380 and $1,980 on two contiguous parcels of unimproved timber land they owned. They filed a timely protest. After a hearing before the Supervisor of Assessments in July 1973 on the protest, the Supervisor of Assessments entered the tentative assessments as the final assessments for the 1973 levy year. Taxpayers timely appealed to the Property Tax Assessment Appeal Board.

When a tax bill for the levy year 1973 was rendered to the

1. The County's response was entitled "Motion Raising Preliminary Objections", but it sought no relief available under Maryland Rule 323. In the body of its pleading the County moved to dismiss the petition. No evidence had been taken, so Rule 535 was not applicable. The pleading was more in the nature of a speaking demurrer than anything else, but was treated by counsel and the court as a motion for summary judgment.

taxpayers based upon the increased assessment theretofore made final by the Supervisor of Assessments, and upon which an appeal was pending, the taxpayers failed to pay the bill. Because taxes for the levy year 1973 were delinquent, the property was sold at a tax sale on 10 June 1974.

By its order dated 1 July 1974, the Appeal Board reduced the assessments for the levy year 1973 to $830 and $220, respectively, on the two parcels of land involved.

After the assessments on the property were reduced by the Property Tax Assessment Appeal Board, the county sent revised tax bills for the year 1973 to the taxpayers for the taxes calculated on the revised assessments and for interest and for tax sale redemption costs. The interest and costs on both parcels amounted in the aggregate to $51.04. The taxpayers refused to pay, and filed their petition in the Circuit Court for injunctive relief.

After a hearing on 20 December 1974 the Circuit Court, Mitchell, J., filed an order on 13 February 1975 dismissing the petition. This appeal was taken from that order.

Appellants raise these questions in their brief:

1. Whether a change in assessment becomes final after the Supervisor of Assessments hears and decides an appeal of a proposed assessment or after a decision of the Property Tax Assessment Appeal Board?

2. Whether the levy and tax sale conducted under a tentative assessment can result in the legal exaction of interest and penalties before a tax bill has been rendered based upon the final assessment as rendered by the Property Tax Assessment Appeal Board?

Their brief concludes with the statement that "a taxpayer should be required to pay taxes based upon a final assessment only after exhaustion of his appeal rights".

The questions and the statement voice an understandable taxpayer grievance, but if the law were as appellants would have it, the capability of the taxing authority to perform its

public functions could be brought to a standstill by mass appeals. The potential harm of such a rule is intolerable to government.

The laws controlling the questions raised here are clear, and the case requires only that we apply them, for no interpretation is needed. Code, Art. 81, § 29A fixes the date of finality as January 1, (a); the fiscal year as the period starting July 1, (b); and the taxable year as the period starting July 1, (c).

Whenever any existing valuation of property for tax purposes shall be increased "it shall be the duty of the appropriate authority to notify the person against whom it is proposed to * * * increase * * * such valuation * * * by a written or printed notice, appointing a day for such person to make answer thereto or present such proof as he may desire in the premises." § 29 (a). The notice must be served at least twenty days before the date of finality or the day of hearing. Id. (b). He may appear and present such proofs and arguments as he may desire. Id. (d).

The end of that phase of the assessment process is covered by § 29 (g), which says:

> "Whenever an answer or protest is filed by any person as a result of the notice called for in subsection (a) of this section, or whenever a request for a change in an existing valuation is denied by a supervisor of assessments for the county or the department of assessments of Baltimore City, it shall be the duty of the appropriate authority to notify the person protesting or requesting a change in such valuation, by a written or printed notice, as to the final valuations so fixed by the supervisor of assessments for the county or the department of assessments of Baltimore City; and such final notice shall contain a statement advising said person of his rights of appeal to the next higher assessing authority within thirty (30) days from the date of said notice and the name and address of said next higher assessing authority."

Appeals are governed by Art. 81, §§ 255-261, and include the provision in § 255 (b) that a taxpayer may demand a further hearing before the Property Tax Assessment Appeal Board as to the assessment of any property made by the initial assessing authority. This is the procedure followed by the taxpayers in this case. As required by § 255 (d), the order of the Property Tax Assessment Appeal Board, entered on 1 July 1974, notified the taxpayers of their right to appeal to the Maryland Tax Court. Being satisfied with the action of the Appeal Board, the taxpayers did not avail themselves of this further right.

There is nothing in the sections of the statute to which we have referred which postpones or suspends the obligation of a taxpayer to pay his taxes because of the pendency of a protest or of an appeal.

The operation of other sections of Article 81 leads inexorably to the collection of the taxes due, by voluntary payment or by sale.

This provision of Art. 81, § 46, seems mandatory:

> "As soon after the date of finality as is practicable and before taxes become due and payable for the full levy year and/or the half levy year, as provided for in this article, the supervisor of assessments of each county and department of assessments of Baltimore City shall prepare and deliver to the collector a book or books showing the valuation and assessment of all taxable property subject to taxation in each county and Baltimore City, and the book or books shall be designated as the tax roll for use of the collectors of county and/or city and State taxes.",

and leads into this provision of the law, found in § 60:

> "Every collector receiving the tax rolls provided for in § 46 of this article, as well as certifications of assessments from the State Department of Assessments and Taxation, shall proceed to collect the taxes due thereon and payable to him with any penalty or interest imposed by law, * * * ."

The record in this case shows that such a bill for 1973 taxes, based upon the new assessment, was rendered to the taxpayers but was not paid. Under § 48, taxes are due on the first day of July of each taxable year, and are overdue and in arrears on the first day of October and shall bear interest thereafter, although under § (c) no interest or penalties are charged until at least thirty days after the bill for taxes has been mailed.

A system of tax sales is provided for in Art. 81, §§ 70-123C. Under § 72 (a), it is declared to be a mandatory duty of the collector of taxes to proceed to sell all property in his county upon which taxes are in arrears.

The collector of taxes had no choice but to proceed to sell the property of the taxpayers for delinquent taxes assessed and billed for the taxable year starting 1 July 1973. The facts before the court in this case showed that the property was sold. When the assessment was reduced by order of the Property Tax Assessment Appeal Board, the tax bill was revised to show the reduced assessments. The amount which the taxpayers were told they must pay in order to redeem their property from the tax sale included interest, penalties, and advertising and other costs of the tax sale, as required by Art. 81, § 93. The position of the taxpayers was and still is that they should not have been required to pay any taxes while the appeal from the assessment was pending. The appellants do not disagree with the manner in which the redemption law was applied, but they contend that it should not have been applied at all. The brief of the appellees informs us that the amount of money involved in the dispute was, at the time of the hearing in the lower court, $51.04.

Appellants express apprehension that if they had paid the taxes for which they were billed on the higher assessments, later reduced, they may not have been able to recover a refund of the overpayment. We think that any rights they may have had later to a refund, for having paid more taxes than were properly and legally chargeable to them, are adequately protected in Art. 81, § 214.

We hold that the obligation to pay taxes, legally assessed

and legally billed, was not stayed or suspended pending an appeal from the assessment, and that non-payment by the taxpayers here inevitably resulted in a sale of their property by the collector of taxes and the requirement upon them to pay interest, penalties, and costs in order to redeem their property.

*Order affirmed.*
*Appellants to pay costs.*