REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 883

September Term, 2013

_____

COMPTROLLER OF THE TREASURY

v.

JOHN ZORZIT

_____

Zarnoch,
Nazarian,
Leahy,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: January 30, 2015

*Judge Kevin Arthur did not participate, pursuant to Md. Rule 8-605.1, in the Court's decision to report this opinion.

In this appeal, we consider whether the Comptroller's Notice of Lien for Unpaid Taxes was properly challenged and vacated in the circuit court during pendency of the taxpayer's appeal in the Maryland Tax Court. Appellee John Zorzit ("Zorzit")—the taxpayer in this case—was the president of Nick's Amusements, Inc. ("Nick's"), a company charged in federal court with money laundering and operating an illegal gambling operation. Appellant, Comptroller of Maryland, assessed deficiency taxes and penalties against Zorzit and Nick's for under-reported gross income in Nick's' tax returns.

Zorzit and Nick's protested the amount of the assessment and the fraud penalties before the Comptroller's Hearings and Appeals Section. Following a hearing on the matter, the hearing officer reduced the amount of taxes owed, but Zorzit and Nick's continued to protest the assessment by appealing to the Maryland Tax Court. While this appeal was pending, the Comptroller filed a notice of lien against Zorzit, who then filed a petition for declaratory and injunctive relief in the Circuit Court for Baltimore County. Zorzit asked the court to vacate the lien, contending that the Comptroller was not authorized to file the lien under Title 13 of the Tax-General Article prior to the Tax Court's disposition of his appeal, and that by filing the lien, the Comptroller deprived him of his property without due process of law.

The circuit court found that although it was not necessary to conduct a hearing prior to imposition of the lien, Zorzit's due process rights under the United States Constitution and the Maryland Declaration of Rights were violated because the Tax-

General Article of the Maryland Code fails to specify an exact deadline by which the Tax Court must hold a post-deprivation hearing following imposition of a tax lien under § 13-807. The court granted Zorzit's motion for summary judgment, declared the statute unconstitutional, and vacated the lien until the Tax Court rendered a decision in Zorzit's appeal. The Tax Court has since rendered a decision affirming, with some alterations, the Comptroller's assessment.

The Comptroller appealed and presents two questions for our review:

I.  "Did the circuit court lack statutory authority to enter an order voiding the tax lien because (a) the taxpayer[] failed to exhaust administrative remedies and (b) § 13-[5]05 of the Tax-General Article prohibits courts from enjoining or preventing the assessment or collection of a tax?"

II. "Did the circuit court err in declaring that due process is denied by the tax lien provision of Maryland's statutory scheme, which affords taxpayers both an opportunity to be heard prior to final assessment and a prompt post-assessment de novo appeal to the Tax Court that is subject to judicial review?"

Although the issues raised in this appeal are moot, similar cases may recur, and it is a matter of significant public concern that similar challenges would obstruct the Comptroller's statutory duty to collect monies due under the tax laws of Maryland. For the reasons set forth herein, we hold that the circuit court did not have the authority to vacate the tax lien because Maryland Code (1988, 2010 Repl. Vol.), Tax-General Article ("Tax-Gen."), § 13-505 expressly prohibits courts from issuing an injunction or any other process enjoining or preventing the Comptroller's collection of a tax. Only in exceptional

2

and narrow circumstances may a taxpayer obtain collateral recourse from the judiciary to prevent the assessment or collection of a tax. Because the underlying action was barred under Tax-Gen. § 13-505, we do not reach the constitutional issue presented in the Comptroller's second question. Accordingly, we vacate the circuit court's judgment and remand the matter to that court with instructions to dismiss Zorzit's petition for declaratory relief.

## THE STATUTORY PROCESS

### A. Disputing Taxes

The Comptroller is charged with the duty to collect and account for certain enumerated taxes, *see* Tax-Gen. § 2-102, and the General Assembly has assigned the Comptroller broad authority and special powers to carry out these duties.[1] The tax assessed in the instant case was an admissions and amusement tax.[2] A taxpayer is required to submit an admissions and amusement tax return "on or before the 10th day of the month that follows the month in which the person has gross receipts subject to the admissions and amusement tax." Tax-Gen. § 4-201(1). If an audit of the tax return

---

[1] For example, officers in the Comptroller's Field Enforcement Bureau "have all the powers, duties, and responsibilities of a peace officer for the purpose of enforcing" certain enumerated laws and taxes (not including admissions and amusement taxes). Tax-Gen. § 2-107.

[2] An admissions and amusement charge includes a charge for "use of a game of entertainment[.]" Tax-Gen. § 4-101(b)(1)(ii).

3

reveals that "the tax due exceeds the amount shown on the return," the Comptroller, or another authorized tax collector,[3] must assess the deficiency. Tax-Gen. § 13-401. The Comptroller then must "mail a notice of assessment . . . to the person or governmental unit against which an assessment is made."[4] Tax-Gen. § 13-410. The assessment is "prima facie correct." Tax-Gen. § 13-411.

Within thirty days after the date on which the notice of assessment was mailed, the taxpayer may submit an application to the Comptroller for revision of the assessment or, if the taxpayer paid the assessment, a claim for a refund. Tax-Gen. § 13-508(a). If the taxpayer fails to pursue either remedy, the assessment becomes final. Tax-Gen. § 13-508(b). If the taxpayer does pursue these remedies, the Comptroller must "promptly" hold an informal hearing and thereafter must "act on the application for revision" and "may assess any additional tax, penalty, and interest due." Tax-Gen. § 13-508(c)(1). A

---

[3]

A "'tax collector' means the person or governmental unit responsible for collecting a tax." Tax-Gen. § 13-101(c)(1).

[4]

Because the Tax-General Article does not define the term "assessment," this Court has looked to the Supreme Court's description of an "assessment" in the context of discussing the federal Tax Injunction Act. We stated that "'an assessment is closely tied to the collection of a tax, *i.e.,* the **assessment** is the **official recording** of liability that triggers levy and collection efforts.'" *Bert v. Comptroller of the Treasury*, 215 Md. App. 244, 269 (2013) (quoting *Hibbs v. Winn,* 542 U.S. 88, 101 (2004)). In comparison to the separate federal provisions for a notice of deficiency and a notice of assessment, we have recognized that Maryland's statute providing for a "notice of assessment" is a "hybrid of the federal provisions, *i.e.,* the Maryland statute combines the notice of deficiency with the notice of assessment so that the taxpayer effectively receives both at once." *Dun & Bradstreet Corp. v. Comptroller of the Treasury*, 86 Md. App. 258, 266 (1991).

4

notice of final determination is then mailed to the taxpayer. Tax-Gen. § 13-508(c)(2).

A taxpayer must "exhaust all available administrative remedies before the appropriate tax determining agency" before he or she may appeal the Comptroller's final determination to the Tax Court for a de novo hearing. Tax-Gen. §§ 13-514, 13-510(a)(2). The Tax Court must "hear and determine [the] appeal[] promptly."[5] Tax-Gen. § 13-519. The Tax Court, as a "quasi-judicial" agency, has the power to "hear, try, determine, or remand any matter before it." Tax-Gen. § 13-528(a)(1). It also "may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court." Tax-Gen. § 13-528(a)(2). The Tax Court will affirm the decision unless there is some "affirmative evidence in support of the relief being sought or an error apparent on the face of the proceeding." Tax-Gen. § 13-528(b).

If, after de novo proceedings in the Tax Court, the taxpayer still seeks to challenge the assessment, Tax-Gen. § 13-532(a)(1) permits judicial review. The Tax Court's final order is enforceable "unless the reviewing court grants a stay upon such condition,

---

[5]
    Under Tax-Gen. § 3-103(a), "[t]he Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government . . . that is authorized to make the final decision or determination or issue the final order about any tax issue, including:
        (1) the valuation, assessment, or classification of property;
        (2) the imposition of a tax;
        (3) the determination of a claim for refund;
        (4) the application for an abatement, reduction, or revision of any assessment
            or tax; or
        (5) the application for an exemption from any assessment or tax."

5

security or bond as it deems proper." Tax-Gen. § 13-532(a)(2).

## B. The Tax Lien

The Tax-General Article provides that "[u]npaid tax, interest, and penalties constitute a lien, in favor of the State, extending to all property and rights to property belonging to: (1) the person required to pay the tax[.]" Tax-Gen. § 13-805(a)(1). "[A] lien arises on the date of notice that the tax is due and continues to the date on which the lien is (1) satisfied; or (2) released by the tax collector because the lien is: (i) unenforceable by reason of lapse of time; or (ii) uncollectible." Tax-Gen. § 13-806(a).

The Comptroller must file a notice of tax lien in order for it to have "the full force and effect of a judgment lien." Tax-Gen. § 13-808. The notice of lien is filed in the circuit court for the county where the property that is subject to the lien is located. Tax-Gen. § 13-807(a). A tax lien takes priority over the proceeds of any sale of the taxpayer's property, except that it is "not valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice of the tax lien has been filed[.]"[6] Tax-Gen. § 13-809(a), (b)(1). Even upon the filing of the notice of lien, "the lien is not valid against any claim described in § 6323(b), (c), or (d) of the Internal Revenue

---

[6]
A prior perfected security interest may be accorded priority over the State's tax claim. *See*, *e.g.*, *Farmers & Merchs. Nat'l Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 66 (1986) (comparing the commercial law statute governing the priority of a bank's perfected security interest in the debtor's estate and the tax law statute governing the priority of the state's tax lien and, in resolving the conflict between them, concluding that "the bank's perfected security interest must be accorded priority over the State's tax claim").

Code[,]" which includes, for example, claims by purchasers of certain kinds of property who did not, at the time of purchase and possession, have actual notice of the filed lien. Tax-Gen. § 13-809(b)(2).

If the taxpayer fails to satisfy the properly filed lien within fifteen days after the notice of lien is issued, or the tax collector does not otherwise release the lien, the Comptroller "may bring an action in a court of the State to enforce the lien." Tax-Gen. § 13-810(a).  Upon the filing of such an action, "[t]he court, acting without a jury, shall: (1) adjudicate all matters involved in the proceedings; and (2) determine the merits of all claims or liens."  Tax-Gen. § 13-810(c).

### C. Tax-Gen. § 13-505

A court "may not issue an injunction, writ of mandamus, or other process against the State or any officer or employee of the State to enjoin or prevent the assessment or collection of a tax." Tax Gen. § 13-505.  The unambiguous language of Tax Gen. § 13-505 reflects the General Assembly's intent to preclude courts from interfering with the detailed administrative process available to taxpayers outlined above.  *Bancroft Info. Grp., Inc. v. Comptroller of the Treasury*, 91 Md. App. 100, 115 (1992).

FACTS AND PROCEEDINGS

### A. Initial Tax Assessment and the Hearing before the Comptroller

A federal money-laundering investigation into Nick's in connection with the operation of illegal video-poker machines prompted the Comptroller to conduct a review

7

of Nick's' past tax returns.[7]  After completing this audit, the Comptroller issued a "Notice of Assessment for Admissions & Amusement Taxes," dated April 23, 2010, against Nick's for the tax period of January 1, 2000 through January 31, 2009. The assessment totaled $8,184,360.87, comprising the tax assessed ($2,963,844.74), interest ($2,256,671.39), and penalties for purported fraud ($2,963,844.74). The Comptroller issued an identical Notice to Zorzit personally as an officer of Nick's.[8]  Upon receipt of these notices, Nick's and Zorzit requested an informal hearing before the Comptroller's Hearings and Appeals Section pursuant to § 13-508.

At the hearing held on October 6, 2010, witnesses testifying on behalf of the Comptroller's office explained that the Baltimore County Police Department and Internal Revenue Service's ("IRS") investigation revealed that approximately 60% of Nick's' gross receipts were paid out to winning customers.  Nick's' reported gross receipts on its admissions and amusement tax returns were based on Nick's' *net* profits *after* paying winning customers. To calculate Nick's' actual gross receipts, the Comptroller's office added the 59.13% payout to customers, as calculated in the police department's report.

---

[7]     On November 12, 2010, Zorzit, on behalf of Nick's, pleaded guilty in the United States District Court in Baltimore, Maryland, to money laundering in violation of 18 U.S.C. § 1957 pursuant to a plea agreement dated October 26, 2010.  In the plea agreement signed by Zorzit, he admitted that "the principals of Nick's Amusements knew that the property [money] was derived from criminal activity."

[8]     "If a corporation . . . is required to pay the admission and amusement tax, personal liability for the tax and interest and penalties on the tax extends to any officer of the corporation who exercises direct control over its fiscal management." Tax-Gen. § 4-301(b).

Zorzit did not dispute his personal liability or that taxes were owed. Zorzit and Nick's did dispute, however, the penalty for fraud as well as the overall amount of taxes owed. Specifically, they argued that the fraud assessment was based solely on Nick's' purported underpayment of the admissions and amusement tax, and that the mere understatement of income is not sufficient under Maryland law to prove fraud.[9] They argued that the Comptroller's office did not demonstrate, by clear and convincing evidence, that Nick's and Zorzit filed a false return with the intent to evade the payment of taxes.

Nick's and Zorzit argued that the Comptroller's assessment of the amount of taxes owed was incorrect because the auditor's calculations for the underpayment of the admissions and amusement tax was based on erroneous assumptions. They claimed, *inter alia*, that the Comptroller indiscriminately applied the payout percentage to receipts generated from all amusement devices, not just the illegal video-poker machines. Therefore, the Comptroller's assessment wrongly included gross receipts from non-gambling machines.

On February 13, 2012, the presiding hearing officer issued two Notices of Final

---

[9] "The badges, indicia, or factors to look for in the tax fraud context include: (1) consistent and substantial understatements of income (or sales, in the sales tax arena); (2) failure to maintain adequate records; (3) implausible or inconsistent explanations of behavior, including the lack of credible testimony before a tribunal; (4) concealment of assets; (5) failure to cooperate fully with tax authorities; (6) awareness of the obligations to file returns, report income or sales, and pay taxes; and (7) failure to file returns." *Genie & Co. v. Comptroller of the Treasury*, 107 Md. App. 551, 568 (1995) (citations omitted).

Determination for Nick's and Zorzit, respectively, containing detailed findings of fact and conclusions of law. According to the hearing officer, the record demonstrated that Nick's "operated an illegal gambling operation in the State of Maryland and [was] significantly underreporting taxable gross receipts to the Comptroller's office." He found that the Comptroller demonstrated fraud by clear and convincing evidence, outlining three "badges" of fraud present, including the consistent and substantial underpayment of income tax; the failure to maintain adequate records by reporting only net profits instead of gross profits; and the awareness by Nick's' officers of their duty to file tax returns. The hearing officer found, however, that it was "more likely than not" that the gross receipts attributable to machines in certain counties were not derived from illegal video-poker machines and adjusted the assessment accordingly. He adjusted the original payout percentage reflected in the assessment from 59.13% to 55.09%. With this adjustment, the hearing officer affirmed the Comptroller, revising the assessment to $6,453,690.16.

With respect to Mr. Zorzit, the hearing officer observed that Zorzit did not dispute his personal liability for the underlying taxes and cited Tax-Gen. § 4-301(b) for the precept that the admissions and amusement tax owed by a corporation "extends to any officer of the corporation who exercises direct control over its fiscal management." He declared that Zorzit, as the 100% shareholder and president of Nick's, was personally liable for the taxes owed by Nick's.

**B. Appeal to the Tax Court**

10

On March 13, 2012, within thirty days of the notice of final determination, Zorzit and Nick's filed petitions of appeal in the Tax Court of Maryland pursuant to Tax-Gen. § 13-510.[10] Zorzit challenged, for the first time, the hearing officer's decision that he was personally liable for the admissions and amusement tax, interest and penalties due under the final notice of determination.

C. **The Lien and Declaratory Judgment Action in the Circuit Court**

On June 7, 2012, and before the Tax Court held a hearing on Zorzit's appeal, the Comptroller filed a Notice of Judgment for Unpaid Tax against Zorzit in the Circuit Court for Baltimore County in the amount of $6,453,690.16.[11] The lien was recorded on July 12, 2012.

Zorzit then filed a petition for declaratory relief, as well as a motion for summary

---

[10]
Nick's and Zorzit challenged several of the hearing officer's findings and alleged that:
a. The Comptroller erroneously calculated the admissions and amusement

tax assessed for the Audit Period.
b. The Comptroller erroneously assessed a 100% fraud penalty under Md.

Code Ann., Tax-General § 13-703.
c. The amount of interest assessed by the Comptroller is erroneous.
d. The Comptroller extended the statute of limitations beyond four (4) years from the date on which the claimed tax was due in violation of Md. Code Ann., Tax-General § 13-1102 because, among other things, the Comptroller did not sustain its burden of proving that the claimed tax was not paid due to fraud or gross negligence.

[11]
The Comptroller also filed a lien against Nick's in the amount of $6,477,015.18 in the Circuit Court for Baltimore City.

judgment, in the Circuit Court for Baltimore County on July 23, 2012. In his Petition for Declaratory Relief, Zorzit framed the issue as a question of statutory interpretation: "when is a tax 'due' under the Tax General Article . . . such that the Comptroller is permitted to file a tax lien against a taxpayer, which by statute has the effect of a judgment lien[?]" Zorzit sought a declaration from the court "establishing that the Tax Lien recorded by the Comptroller – before the Tax Court has determined the propriety of the assessment – is premature, not authorized by the plain meaning of any section of Title 13 of the Tax Code and violative of Mr. Zorzit's fundamental right to due process." Zorzit further claimed that he would be substantially and irreparably harmed by the imposition of the tax lien, because he would be considered in default on his other loans and lines of credit. Because the lien would effectively foreclose him from accessing future lines of credit, it would have a "catastrophic" impact on him and his businesses.

After two hearings,[12] the circuit court entered an order on April 17, 2013 granting Zorzit's motion for summary judgment and entering a declaratory judgment vacating the lien until the "Maryland Tax Court has made a decision on the appeal by Mr. Zorzit that probable cause exists for the imposition of the tax lien." The court rejected Zorzit's claim that the Comptroller lacked the statutory authority to file the lien, and that taxpayers are entitled to a pre-deprivation hearing in the Tax Court. Rather, the circuit court vacated

---

[12]
    The court held a motions hearing on February 7, 2013, but held the matter *sub curia* and instructed the parties to submit additional briefing. The court held a second hearing on March 19, 2013.

the lien based on its conclusion that Maryland's tax code fails to provide a sufficiently prompt post-deprivation hearing after the Comptroller files a notice of tax lien under Tax-Gen. § 13-806.[13] The Court surveyed several Supreme Court cases, including *Commissioner v. Shapiro*, 424 U.S. 614 (1976), *Matthews v. Eldridge*, 424 U.S. 319 (1976), and *Fuentes v. Shevin*, 407 U.S. 67 (1972), and determined that Maryland's statutory scheme was insufficient:

> The question then becomes whether there was a right to a later judicial determination of the legal right for the imposition of a lien against Zorzit's property. There is no dispute but that the Maryland Tax Court acting in a quasi-judicial capacity has the ability to make the probable cause determination. Is Maryland's statute sufficient to satisfy due process considerations by stating that the tax court hearing is to be promptly held? I think not.

The court noted that "in this case we are approaching 1 year from the time of the Notice of the Lien," and concluded "[f]rom the case law cited through *Phillips*, *Fuentes*, *Shapiro* and state law cases, a set period of time appears to be a necessary requirement so that a more than less bright line can be drawn to afford due process constitutional post deprivations rights following a Notice of Tax Lien."

On April 26, 2013, the Comptroller filed a motion to stay enforcement of judgment and a motion to alter or amend judgment, arguing that the court violated Tax-Gen. § 13-505, which prohibits courts from taking action to prevent tax collection. The court denied

---

[13] We note that Zorzit did not challenge the promptness of the Tax Court hearing in his complaint or in his motion for summary judgment.

13

both motions in a ruling entered on June 17, 2013. On July 2, 2013, the Comptroller filed a timely notice of appeal.

## D. Tax Court Ruling

A few weeks later, on July 19, 2013, the Tax Court affirmed the Comptroller's tax assessments and the interest against Nick's and Zorzit, but reduced the fraud penalty from $2,159,794.97 to $1,079,862.45. The time between the institution of the tax lien (June 7, 2012) and the Tax Court's ruling (July 19, 2013) spanned just over one year.

## DISCUSSION

### *Standard of Review*

The "'standard of review of the declaratory judgment entered as the result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law.'" *Md. Agric. Land Preservation Found. v. Claggett,* 412 Md. 45, 61 (2009) (quoting *S. Easton Neighborhood Ass'n v. Town of Easton,* 387 Md. 468, 487 (2005)). Because our inquiry into whether the circuit court's order vacating the Comptroller's lien violates the anti-injunction statute, Tax-Gen. § 13-505, is a question of statutory interpretation, we conduct a de novo review. *See Reier v. State Dep't of Assessments & Taxation*, 397 Md. 2, 26 (2007) (citations omitted).

### *Mootness*

During pendency of this appeal, the Tax Court rendered its decision affirming the Comptroller's tax and interest assessments against Zorzit and Nick's, and affirming the

14

fraud penalties with adjustments. Because there is no longer an actual controversy between the parties for which we can provide a remedy, the instant appeal is moot.[14] "The test for mootness is 'whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy[.]'" *Hamot v. Telos Corp.,* 185 Md. App. 352, 360 (2009) (quoting *Adkins v. State*, 324 Md. 641, 646 (1991)). Indeed, Zorzit has not participated in this appeal, as the timeframe for which he sought a remedy has passed, leaving him no incentive to challenge the Comptroller's appeal.

Notwithstanding that it is moot, this case demands consideration. "Unlike the Article III constitutional constraints on the federal courts, . . . our mootness doctrine is based entirely on prudential considerations" that do not constitutionally bar us from reaching the merits of a moot action. *Carroll Cnty. Ethics Comm'n v. Lennon*, 119 Md. App. 49, 57 (1998) (citing *Reyes v. Prince George's Cnty.*, 281 Md. 279, 296-97 (1977)). Accordingly, we have the ability to express our views on the merits of a moot case under two circumstances. *J. L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 96 (2002). The first "is where a controversy that becomes non-existent at the

---

[14] On July 29, 2013, the Comptroller filed a motion to restore notice of lien in the circuit court. The court denied the motion, instructing: "This is a matter on appeal, though in view of the subsequent Tax Court proceeding, it appears moot, but with that appeal, I have no further jurisdiction over the decision I made." The court also reasoned that the Comptroller could, instead, file a new tax lien that was "legally and factually appropriate" after the Tax Court's decision.

moment of judicial review is capable of repetition but evading review." *Sanchez v. Potomac Abatement, Inc.*, 198 Md. App. 436, 433 (2011) (citing *State v. Parker,* 334 Md. 576, 584 (1994)), *aff'd,* 424 Md. 701 (2012). Aside from class actions, the first exception is applicable only in instances when: "(1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration" and (2) "there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Parker*, 334 Md. at 585.

The next "judicial gloss to the mootness doctrine allows us to express our views on the merits of a moot case to prevent harm to the public interest." *Sanchez*, 198 Md. App. at 433. In *Lloyd v. Board of Supervisors of Elections*, the Court of Appeals expounded:

> **[O]nly where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions**. . . . [I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight.

206 Md. 36, 43 (1954) (emphasis added).[15]

---

[15]

Maryland courts have subsequently referred to the *Lloyd* public-interest exception as an "offshoot" to the mootness doctrine, because although it justifies discussion of the merits of a moot issue, it permits appellate courts to dismiss the action as moot if desired. *Sanchez*, 198 Md. App. at 444 n.5 (citing *Cottman v. State*, 395 Md. 729, 745 (2006)).

We agree with the Comptroller that the case presented on appeal involves a matter capable of repetition yet evading review and of significant public concern. In Exhibit 9 to Zorzit's motion for summary judgment, the Comptroller advised Zorzit in a letter that "[a]lthough the Comptroller is legally authorized to file a . . . tax lien upon the issuance of any fraud assessment, this practice is generally limited to cases where the taxpayer is penalized for fraud." The Comptroller echoed this policy at oral argument. Assuming this assertion is true, the issues raised in this appeal will likely arise again if a taxpayer assessed with a fraud penalty challenges the imposition of a lien while his or her appeal in the Tax Court is pending. We believe that an action to challenge a lien during the *pendency of an appeal before the Tax Court* is of sufficiently short length to evade review by this Court before the issue ceases, or, in other words, the Tax Court renders its decision on the appeal. Indeed, the Tax Court is required to *promptly* hear and determine an appeal. Tax-Gen. § 13-519. Thus, delinquent taxpayers may obtain similar injunctions, and even if these proceedings would not ultimately evade judicial review, the delay would stymie the Comptroller's duty to secure significant amounts of money due to be collected under the tax laws of Maryland.

A taxpayer's challenge to the Comptroller's imposition of a tax lien while the taxpayer's appeal is pending in the Tax Court is clearly an issue that impacts the relationship between the government and its citizens, and the Comptroller will likely appeal a taxpayer's future successful challenge to the imposition of a tax lien in these

17

circumstances. Given the extensive and comprehensive administrative remedies available to taxpayers under the Tax-General Article, we are persuaded that it is important to clarify and reinforce the necessity of exhausting those remedies before seeking relief in the circuit court and to emphasize the circuit court's lack of authority to enter orders, like the order entered here, vacating tax liens before the Tax Court's final determination of the merits of the tax assessment. Therefore, we will not dismiss this instant appeal as moot, and turn to the first issue presented.

## I.

### *Exhaustion and Tax-Gen. § 13-505*

The Comptroller contends that the circuit court lacked the authority to entertain Zorzit's declaratory judgment action for two reasons: (1) Zorzit failed to exhaust his administrative remedies; and (2) Tax-Gen. § 13-505 prohibited the circuit court from entering an order enjoining the collection of a tax.[16] Zorzit has not participated in this appeal by way of briefing or argument. Before the circuit court, however, Zorzit argued

---

[16] Although not raised by the Comptroller, another threshold issue is the form of the circuit court's declaratory judgment. The court's order, entitled "Declaratory Judgment," is a fourteen-page document in which the court entered a declaratory judgment via granting Zorzit's motion for summary judgment. As instructed by the Court of Appeals in *Allstate Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 363 Md. 106, 117 n.1 (2001), it is not sufficient that a declaratory judgment be part of a memorandum; rather, the terms of the declaratory judgment must be set forth on a separate document. A failure to issue a proper declaratory judgment is not a jurisdictional defect, however, and this Court has the discretion to "review the merits of the controversy and remand for entry of an appropriate declaratory judgment by the circuit court." *Bushey v. N. Assurance Co.,* 362 Md. 626, 651 (2001). We exercise our discretion to review the merits of this case.

there was no administrative remedy available to exhaust that would permit a challenge to the propriety of a lien filed prior to the Tax Court's resolution of his appeal. Zorzit challenged the Comptroller's *interpretation* of when a tax becomes "due" under Tax-Gen. § 13-806(a), claiming that the Comptroller's reading—that an imposition of the lien before the Tax Court's resolution of an appeal is proper—violated his due process rights.

## A. Zorzit Failed to Exhaust His Administrative Remedies

The Maryland Declaratory Judgment Act, Maryland Code (1974, 2013 Rep. Vol.), Courts and Judicial Proceedings Article ("CJP"), § 3-409(b), provides:

> If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.

In light of this statute, the Court of Appeals has reiterated "that where there exists a special statutory remedy for a specific type of case, and the Legislature intends that remedy to be exclusive or primary, a party may not bypass the special statutory remedy by bringing an action for a declaratory judgment or for equitable relief." *Furnitureland S., Inc. v. Comptroller of the Treasury,* 364 Md. 126, 133 (2001) (citations omitted). The rationale underlying the exhaustion requirement stems from the "expertise which the agency can bring to bear in sifting the information presented to it" and the notion that permitting "interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance." *Soley v. Comm'n on Human Relations,* 277 Md.

19

521, 526 (1976). Moreover, "'administrative agencies [such as the Tax Court] are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review.'" *Furnitureland S., Inc.,* 364 Md. at 138 (quoting *Montgomery Cnty. v. Broad. Equities,* 360 Md. 438, 451 n.8 (2000)). "This includes the constitutionality of an enactment as applied, as well as the constitutionality of an enactment as a whole." *Prince George's Cnty. v. Ray's Used Cars*, 398 Md. 632, 651 (2007) (citing *Ins. Comm'r v. Equitable,* 339 Md. 596, 622 (1995)).

When a plaintiff has failed to exhaust his or her administrative remedies, courts normally dismiss the action, "because, although the court may well have subject matter jurisdiction over the action before it, the exhaustion doctrine bars the court from exercising that jurisdiction, thereby gratifying the paramount legislative intent that the matter be dealt with first by the Executive Branch agency." *State Ret. & Pension Sys. v. Thompson,* 368 Md. 53, 65-66 (2002).

Specifically with regard to the tax scheme at issue here, the Court of Appeals "has consistently treated the special statutory administrative remedies for the determination of tax questions to be exclusive or primary." *Furnitureland S., Inc.*, 364 Md. at 134 (cataloguing prior holdings); *accord White v. Prince George's Cnty*., 282 Md. 641, 649-50 (1978) These exclusive remedies are set forth in the Tax-General Article, which we detailed at the outset of this opinion. That remedies are exclusive or primary means that

20

they cannot be bypassed by the pursuit of other remedies and that the remedies must be invoked and exhausted before judicial intervention. *Furnitureland S., Inc.*, 364 Md. at 133 (citations omitted); *accord White*, 282 Md. at 649; *State Dep't of Assessments & Taxation v. Clark*, 281 Md. 385, 401 (1977); *Balt. Cnty. v. Md. Dep't of Assessments & Taxation*, 47 Md. App. 88, 91 (1980). Moreover, it is important to note "the settled principle that laws enacted for the collection of general taxes must be interpreted with very great liberality; consequently, construction should not be undertaken with an eye to defeating the legislation, but with both eyes focused on giving it force, if reasonably possible." *Surratts Assocs. v. Prince George's Cnty.*, 286 Md. 555, 566 (1979) (citing *Casey Dev. v. Montgomery Cnty.*, 212 Md. 138, 147 (1957)).

### B. Tax-Gen. § 13-505 Barred Zorzit's Collateral Action

The General Assembly has unambiguously expressed its intent to preclude judicial intervention in tax cases. Section 13-505 establishes that "[a] court may not issue an injunction, writ of mandamus, or other process against the State or any officer or employee of the State to enjoin or prevent the assessment or collection of a tax[.]" Indeed, taxpayers typically must pay the tax and later seek a refund if that tax is determined to be "erroneously, illegally, or wrongfully assessed or *collected* in any manner." Tax-Gen. § 13-901(a)(2) (emphasis added). We have interpreted § 13-505, when read in conjunction with Tax-Gen. § 13-514 (requiring exhaustion before an appeal to the Tax Court) and CJP § 3-409(b) (requiring pursuit of the statutory remedy instead of

21

a declaratory judgment action) to "demonstrate[] the Legislature's intent that tax disputes be resolved through the procedures established in Md. Tax-Gen. Code Ann. §§ 13-510 through 13-529." *Bancroft Info. Grp., Inc., supra,* 91 Md. App. at 115; *see also Kuypers v. Comptroller of the Treasury,* 173 F. Supp. 2d 393, 396 (D. Md. 2001) (recognizing that, pursuant to § 13-505, the General Assembly "has by statute expressed its intention that no suit may be brought to interfere with the statutory process for the assessment or collection of a state tax").

In the realm of general tax law, anti-injunction statutes serve to ensure efficient collection of unpaid taxes owed to the government. These statutes contemplate that taxpayers may strive to dispute their tax liability, either armed with valid challenges or equipped with unfounded ones, beyond the avenues provided by the legislature. As the Supreme Court stated in 1880, taxes "may be vital to the existence of a government[,]" and "[t]he idea that every tax-payer is entitled to the delays of litigation is unreason." *Springer v. United States*, 102 U.S. 586, 594 (1880).

The General Assembly has provided the Comptroller with a wide array of tax collection expedients, including the right to sell estate property, to demand security payments, and to file liens, actions to collect taxes, and jeopardy assessments.[17] *See* Tax-

---

[17] For example, provided that sufficient notice is given, the Comptroller may issue a jeopardy assessment, constituting an immediate assessment of a tax, if it "finds that the collection of a tax . . . will be jeopardized by the departure, from the State, of the person required to pay the tax, the removal of property from the State, the concealment of the person or the property, or any other act." Tax-Gen. § 13-821(a). The Comptroller may also "require acceptable security to be posted" in a set amount to secure payment of the tax, interest, and

22

Gen. subtitle 8 of Title 13. The tax lien in particular secures the State's interest in the taxpayer's unpaid taxes until the taxpayer satisfies his or her tax debts or until the tax collector seeks to enforce that lien and collect money from the taxpayer. *See* Black's Law Dictionary 1063 (10th ed. 2009) (defining a "lien" as "[a] legal right or interest that a creditor has in another's property, lasting usually until a debt or duty that it secures is satisfied"). Because a tax lien does not take priority until it is filed, and even upon the filing, is not valid against a *bona fide* purchaser, Tax-Gen. § 13-809(b)(2), the General Assembly has authorized the Comptroller to file a notice of lien any time after the taxpayer receives notice of the amount of tax that is due. Tax-Gen. § 13-806(a).

If Maryland taxpayers were permitted to seek relief collateral to the detailed administrative procedures governing tax assessment and collection at their will, tax litigation would be rampant, thereby vitiating the intent of the legislature in crafting the Maryland tax framework as a primary, exclusive method to dispute taxes. Judge Hollander explained this precept in *Abington Center Associates Ltd. Partnership v. Baltimore County*:

> In *Brown v. Montgomery County*, 30 Md. App. 107, 112 (1976), we recognized a county's duty to sell the property of delinquent taxpayers. We therefore declined to stay the obligation to pay property taxes, based on a final assessment, pending an appeal. Although the property owners filed suit, seeking injunctive and declaratory relief, and argued that they were

---

penalty that is due or may become due in order to protect tax revenue. Tax-Gen. § 13-824; *see also* § 13-825(a) ("The Comptroller may require a person whose gross receipts are subject to admissions and amusement tax and whose business is not a permanent operation in the State to post security for the tax in the amount that the Comptroller determines.").

entitled to exhaust their rights in court, we disagreed, stating: "[I]f the law were as appellants would have it, the capability of the taxing authority to perform its public functions could be brought to a standstill by mass appeals. The potential harm of such a rule is intolerable to government." *Id.* at 109-10.

115 Md. App. 580, 600, n.10 (1997) (alteration in original). The Maryland General Assembly, like Congress and other state legislatures, has enacted an anti-injunction statute in the form of Tax-Gen. § 13-505 to protect "the Government's need to assess and collect taxes as expeditiously as possible[.]"[18] *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).

### C. Exceptions to the Exhaustion Doctrine

---

[18] For example, the anti-injunction provision of the Internal Revenue Code is similar in scope and intent to Tax-Gen. § 13-505: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed[,]" unless otherwise provided by law. I.R.C. § 7421(a). The federal courts have determined that this provision does not deny due process so long as judicial review in a refund action is available. *See*, *e.g.*, *Prof'l Eng'rs, Inc. v. United States*, 527 F.2d 597, 600 (4th Cir. 1975). Other states have enacted anti-injunction statutes as well. *See, e.g.*, Ariz. Rev. Stat. Ann. § 42-11006 (2014) ("A court may not issue an injunction, writ of mandamus or any other extraordinary writ in any action or proceeding against the state, a county or municipality or a state, county or municipal officer to prevent or enjoin: 1. Extending an assessment on the tax roll. 2. Collecting an imposed or levied tax."); Cal. Rev. & Tax. Code § 6931 (2014) ("No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any tax or any amount of tax required to be collected."); N.Y. Tax Law § 1140 (McKinney 2014) ("The remedies provided . . . shall be exclusive remedies available to any person for the review of tax liability . . .; and no determination or proposed determination of tax or determination on any application for refund shall be enjoined or reviewed by an action for declaratory judgment, an action for money had and received, or by any action or proceeding other than a proceeding under article seventy-eight of the civil practice law and rules.").

There are, however, "[l]imited exceptions to the exhaustion doctrine [that] permit a party, in tax matters and other kinds of cases, to pursue alternative forms of relief in court." *Abington*, 115 Md. at 592-93. "These exceptions include (1) when the party attacks the statutory scheme as facially unconstitutional; (2) when there is no administrative remedy; and (3) when the administrative remedy provided by the statutory scheme is inadequate." *Id.* at 593 (citations omitted).

To determine whether this litigation falls within one of the exceptions, it is appropriate, first, to re-examine the relief sought by Zorzit in the circuit court. As summarized in his supplemental brief in support of his motion for summary judgment filed below, Zorzit asserted:

> Mr. Zorzit seeks to vacate a Notice of Lien Judgment for Unpaid Tax ("Tax Lien") in excess of $6,450,00 because filing the Tax Lien in advance of any hearing before the Maryland Tax Court is both inconsistent with the provisions of Title 13, Subtitle 8 of the Tax-General Article of the Maryland Code (the "Tax Code") and violative of Mr. Zorzit's fundamental rights to due process. [19]

[19] We recognize that a "temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in terms of the Fourteenth Amendment." *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972) (citations omitted). However, as the Supreme Court explained in *Phillips v. Commissioner*, "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." 283 U.S. 589, 596-97 (1931) (citing *Springer, supra*, 102 U.S. at 593; *Scottish Union & Nat'l Ins. Co. v. Bowland*, 196 U.S. 611, 631 (1905)); *see also De Pauw Univ. v. Brunk*, 53 F.2d 647, 650 (W.D. Mo. 1931) (""So far as taxation is concerned, due process of law is fully satisfied if at some stage in the proceeding the taxpayer has notice and opportunity to be heard. He may not have that opportunity until after the tax has been paid and he has brought suit to recover back, but, if he has it even then the due process provision is not violated."), *aff'd sub nom. DePauw Univ. v. Brunk*, 285 U.S. 527 (1932). Though we cite to *Phillips* for the foregoing principle, we caution that the

25

(Emphasis in original).

i. The Maryland Tax Code Constitutes an Adequate Administrative Remedy

The Maryland tax code provides a full range of administrative procedures to taxpayers. Administrative remedies are "'not 'inadequate' so as to authorize judicial intervention before exhaustion of the remed[ies] merely because [they are] attended with delay, expense, annoyance, or even some hardship.'" *Prince George's Cnty. v. Blumberg*, 288 Md. 275, 292 (1980) (quoting *Bennett v. Sch. Dist. of Royal Oak*, 159 N.W.2d 245, 247 (Mich. App. 1968)).

Here, Zorzit availed himself of the procedures for disputing the taxes assessed against him. Upon receiving the notice of assessment for admissions and amusement taxes, Zorzit requested an informal hearing before the Comptroller's Hearings & Appeals Section pursuant to Tax-Gen. § 13-508(c), where he had the opportunity to challenge his assessment. The hearing officer examined Zorzit's challenges and, heeding some of his arguments, reduced the amount of the assessment. It is important to underscore that the General Assembly has conferred broad and immediate powers on the Comptroller to collect and secure taxes upon

---

decision has limited application in this case. *Phillips* concerned federal tax statutes, which, in this context, are notably different in that the IRS is not permitted to assess or begin collection proceedings until the Tax Court has reached a final determination, unless the case involves a jeopardy assessment. I.R.C. § 6213(a).

26

assessment.  By operation of statute, "[u]npaid tax, interest, and penalties **constitute a lien, in favor of the State**, extending to all property and rights to property belonging to . . . the person required to pay the tax[,]" Tax-Gen. § 13-805 (emphasis added).  Pursuant to Tax-Gen. § 13-806(a), "**the lien arises on the date of the notice that the tax is due** and continues to the date on which the lien is: (1) satisfied; or (2) released by the tax collector because the lien is: (i) unenforceable by reason of lapse of time; or (ii) uncollectible." (Emphasis added).  The Comptroller "perfects" the lien by filing a notice of tax lien in the circuit court.[20] Tax-Gen. § 13-807(a).

After receiving his notice of final determination, Zorzit chose to further appeal his assessment to the Tax Court pursuant to Tax-Gen. § 13-510(a)(2). Thereafter, faced with concerns stemming from the millions of tax dollars owed in this case, Zorzit's fraud penalty, and his guilty plea for federal money-laundering, the Comptroller exercised its statutory authority to file a lien—something the Comptroller contends is an infrequently used tool at this stage along the tax-dispute continuum—to safeguard the public's interest in the monies owed by

---

[20]
In *Rossville Vending Machine Corp. v. Comptroller of the Treasury*, 114 Md. App. 346, 347-48 (1997), the Comptroller levied a tax assessment against the taxpayer, Rossville, and filed a notice of tax lien in the Circuit Court for Baltimore County two days later. Rossville then pursued his appeal rights concerning the validity of its tax assessment, which was ultimately affirmed.  Although the case concerned the effect of the statute of limitations on the tax lien, the court's opinion was premised on the viability of the notice of tax lien filed by the Comptroller and that the lien was not subject to the statute of limitations.

Zorzit to the State of Maryland. Importantly, it was only *after* Zorzit had notice of his assessment and the opportunity to challenge the amount of his assessment at the informal hearing that the Comptroller filed the lien, *in the reduced amount*, against Zorzit's assets. Stated differently, the Comptroller, in exercising its broad powers bestowed by the General Assembly, confronted the possibility that Zorzit's assets might be depleted during the pendency of the appeal, that other creditors might initiate claims, or that more fraudulent acts might occur in choosing to file the lien before the Tax Court's final determination. Indeed, the Comptroller must file the lien in order for it to have "the full force and effect of a judgment lien." Tax-Gen. § 13-808. If filed later, the lien may have become subordinate to a prior perfected security interest. *See*, *e.g.*, *Farmers & Merchs. Nat'l Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 66 (1986).

Had Zorzit not appealed to the Tax Court, the alternative scenario likely would have been enforcement of the notice of lien. The tax code provides that if a taxpayer fails to satisfy the properly filed lien within fifteen days after the notice of lien is issued, or the Comptroller does not otherwise release the lien, the Comptroller "may bring an action in a court of the State to enforce the lien." Tax-Gen. § 13-810(a). Upon the filing of such an action, "[t]he court, acting without a jury, shall: (1) adjudicate all matters involved in the proceedings; and (2) determine the merits of all claims or liens." Tax-Gen. § 13-810(c). Here, the

Comptroller did not seek to enforce the lien, presumably because Zorzit pursued his right to appeal before the Tax Court. In any case, the Comptroller could not have enforced the lien against Zorzit without a full adjudicatory hearing in the circuit court.

In sum, the exceptions to the exhaustion requirement for "when there is no administrative remedy" and "when the administrative remedy provided by the statutory scheme is inadequate" do not apply here. The Tax-General Article provides Zorzit with adequate administrative remedies for his challenge to the propriety of the lien and the underlying assessment through several alternative methods of review: (1) an informal hearing before the Comptroller's Hearings and Appeals Section; (2) an appeal to and hearing before the Tax Court; or (3) upon enforcement of the lien, an adjudication of the merits of the lien before the circuit court. By virtue of his informal hearing, Zorzit already challenged the assessment and, therefore, the amount of the lien ultimately filed pending his appeal to the Tax Court. It was error for the circuit court to review the merits of the case before Zorzit fully exhausted the mechanisms available to him for disputing his assessment. As noted by the Supreme Court, "[t]he doctrine [of exhaustion of administrative remedies], wherever applicable, does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion and, correlatively, of

awaiting their final outcome before seeking judicial intervention." *Aircraft &*
*Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 767 (1947).

ii.     The Constitutional Exception Does Not Apply

The "'constitutional exception'" to the exhaustion rule "permits a judicial
determination without administrative exhaustion when there is a direct attack upon
the power or authority . . . of the legislative body to adopt the legislation from
which relief is sought." *Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 308
(1979) (reviewing the holding in *State Dep't of Assessments & Taxation v. Clark*,
281 Md. 385 (1977)).   The Court of Appeals has described this exception as
"extremely narrow[,]" *Ray's Used Cars*, *supra,* 398 Md. at 650, and has
significantly limited the scope of the exception over the years. *Broad. Equities,*
*Inc.*, 360 Md. at 455.

For example, in *Goldstein v. Time-Out Family Amusement Centers, Inc.*,
301 Md. 583, 590 (1984), the Court of Appeals held that "the attack must be made
to the constitutionality of the statute as a whole and not merely as to how the
statute has been applied."   In *Goldstein*, the plaintiffs were the owners of a
company that operated family amusement centers that gained revenue by the
charge and operation of coin-operated games and amusement devices. *Id.* at 585.
After receiving its admissions and amusement tax assessment, the plaintiffs filed a
declaratory judgment action in the Circuit Court for Anne Arundel County,

30

seeking, *inter alia*, a judicial declaration that a statute containing various exemptions and one of the Comptroller's regulations were unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights. *Id.* at 586. The plaintiffs did not seek injunctive relief. The circuit court agreed with plaintiffs and issued a declaration that the statutory exemptions and the regulation were unconstitutional. Granting certiorari before this Court heard the appeal, the Court of Appeals reversed. *Id.* at 587.

The Court determined that the constitutional exception was not applicable in that case because "[a]lthough [the plaintiffs] originally claimed to attack the exemptions statute in its entirety, it is clear . . . that [their] real protest focused upon the statutory exemptions granted to recreational businesses, and not upon the exceptions for non-profit and charity institutions[.]" *Id.* at 590. The Court held that the plaintiffs were not attacking the legislature's power to enact the statutory exemptions; the company "merely attacked certain exemptions granted to businesses similar to its own." *Id.* Further, the Court concluded that plaintiffs' challenge to the regulation related only to how the exemption was applied to their company, not how the exemption applied to all companies. *Id.* at 591. Therefore, the Court held that the plaintiffs were required to exhaust their administrative remedies before seeking a judicial determination.

31

Here, in his petition for declaratory relief and motion for summary judgment, Zorzit challenged the Comptroller's interpretation of when a tax becomes "due" under Tax-Gen. § 13-806(a), claiming that the Comptroller's reading—that of the filing of a notice of lien under that statute before the Tax Court's resolution of an appeal is proper—violated his due process rights. Zorzit expressly *invokes the validity* of the statute by arguing that the Comptroller's action *violated* it. In our view, the crux of Zorzit's argument is that the statute was unconstitutional *as applied* in his case because the Comptroller filed the notice of lien before the Tax Court rendered a decision on his appeal. In other words, Zorzit does not contend that any tax lien filed under the statute would be unconstitutional in any taxpayer's case; therefore, he does not attack the constitutionality of the statute as a whole. Indeed, to fall within the constitutional exception, the attack must be made as to "all of [the statute's] parts and all of its applications." *Ray's Used Cars*, 398 Md. at 652.

Unlike the plaintiffs in *Goldstein*, here, Zorzit sought to vacate the lien in addition to a declaration that the statute was unconstitutional. Therefore, because this case invokes the anti-injunction statute, Tax-Gen. § 13-505, even if Zorzit had articulated a constitutional challenge to the whole statute, under *Holiday Point Marina Partners v. Anne Arundel County*, 349 Md. 190 (1998), the constitutional exception does not apply.

32

The Court of Appeals has established that "where the legislature has expressly provided or intended that the administrative and judicial review remedy be the 'exclusive' remedy, the [constitutional] exception is inapplicable, and a declaratory judgment or equitable action challenging the validity of an enactment 'as a whole' will not lie." *Broad. Equities, Inc.*, 360 Md. at 457 (citations omitted). In *Holiday*, the plaintiff-marina applied for a zoning variance that was necessary pursuant to county law to obtain a permit to construct additional boat slips on its pier. 349 Md. at 194-95. The Zoning Hearing Officer denied the application, and the plaintiff filed a timely appeal to the Anne Arundel County Board of Appeals. *Id.* at 195. Before the disposition of its administrative appeal, however, the plaintiff filed a declaratory judgment action in the Circuit Court for Anne Arundel County challenging the county ordinance requiring the zoning variance as unconstitutional by virtue of being preempted by state and federal law. *Id.* The circuit court entertained the action based on its conclusion that the plaintiff attacked the county's authority to adopt the disputed law, citing *Harbor Island Marina*, *supra*, and issued a declaratory judgment that the county was authorized to adopt the law and that the ordinance was not otherwise unconstitutional under the doctrine of preemption. *Id.* at 197. This Court affirmed.

33

On appeal, the Court of Appeals issued a mandate vacating our affirmance and remanding to this Court with directions to vacate the circuit court's judgment. After reviewing the General Assembly's "express" statement that the administrative and judicial review remedy applicable in that case was exclusive, the Court concluded that "[t]he effect of such [express] language is to abrogate any alternative legal or equitable remedies that might otherwise have existed" and that "where the administrative and judicial review procedures are exclusive, neither a declaratory judgment action nor a common law or equitable action will lie." *Id.* at 202-03 (citations omitted). The Court established that "[t]he so-called 'constitutional' or 'validity' exception to the requirement that a primary administrative remedy be first invoked and exhausted ordinarily has no application when the administrative and judicial review remedy is exclusive." *Id.* at 203 (citations omitted).

Here, the Court of Appeals has determined that the Tax-General Article provides the exclusive, primary remedies for tax-related disputes, and the General Assembly enacted Tax-Gen. § 13-505 to establish an explicit prohibition against judicial interference with the tax assessment and collection process. Therefore, even if Zorzit articulated a challenge to the legislature's authority to enact the statute or to the validity of the statute as a whole, he could not obtain relief from the judiciary pursuant to the constitutional exception without first exhausting his

34

administrative remedies. Indeed, the Court of Appeals has quoted the Supreme

Court as stating:

> It is true that the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention. But . . . this rule is not one of mere convenience or ready application. **Where the intent of [the legislature] . . . is clear to require administrative determination, either to the exclusion of judicial action or in advance of it, a strong showing is required, both of inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process. . . . commands for judicial restraint in this respect are not lightly to be disregarded.**'

*Poe v. City of Baltimore*, 241 Md. 303, 310 (1966) (emphasis added) (quoting *Aircraft &*

*Diesel Equip. Corp., supra,* 331 U.S. at 773-74) (internal quotation marks omitted).

In sum, the instant case does not fall within the exceptional and narrow

circumstances under which a taxpayer may obtain collateral recourse from the judiciary

prior to exhausting the primary and exclusive remedies contained in the Tax-General

Article.

## II.

### *Procedural Due Process*

35

Maryland appellate courts "adhere[] to the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground." *McCarter v. State*, 363 Md. 705, 712 (2001) (quoting *Balt. Sun v. Mayor & City Council of Balt.*, 359 Md. 653, 659 (2000)) (internal quotation marks omitted). The "strong and established policy is to decide constitutional issues only when necessary." *VNA Hospice of Md. v. Dep't of Health & Mental Hygiene,* 406 Md. 584, 604 (2008). Because we conclude that § 13-505 precluded the court from enjoining the tax lien filed by the Comptroller in this case, we need not and shall not resolve the constitutional issue raised in this appeal.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTION TO DISMISS THE ACTION.**

**COSTS TO BE PAID BY APPELLEE.**

36